**Jerome SINGLETON, Plaintiff–Appellant,**

v.

**CITY OF NEW YORK, Ronald Salzer and Anthony Dellaventura, Defendants–Appellees.**

**No. 596, Docket 79–7628.**

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1980.

Decided Sept. 25, 1980.

---

Ernest Holzberg, New York City, for plaintiff–appellant.

L. Kevin Sheridan, Asst. Corp. Counsel, New York City (Allen G. Schwartz, Corp. Counsel of the City of New York, Ronald E. Sternberg, Douglas E. Libby, New York City, of counsel), for defendants–appellees.

Before WATERMAN and MANSFIELD, Circuit Judges, and WEINSTEIN, District Judge.*

MANSFIELD, Circuit Judge:

Jerome Singleton appeals from a judgment of the United States District Court for the Southern District of New York entered by Judge Constance Baker Motley on September 9, 1979, dismissing plaintiff's complaint against the City of New York and two of its police officers under 42 U.S.C. § 1983, alleging that in violation of his constitutional rights he was assaulted, falsely arrested and maliciously prosecuted for resisting arrest. The complaint was dismissed on the grounds (1) that the false arrest and assault claims were time–barred and (2) that the malicious prosecution claim, though timely filed, failed to allege that the state prosecution terminated in plaintiff's favor. We affirm.

On November 14, 1975, Singleton was in a restaurant in New York City. Two plain-clothes New York City police officers, Ronald Salzer and Anthony Dellaventura, arrived at the restaurant after receiving a report that a black male had committed a robbery at a different restaurant which they apparently mistakenly believed to be the restaurant where Singleton was present. What happened next is a matter of dispute. Singleton, who is black, alleges that the police officers failed to identify themselves, assaulted him and arrested him for the crime of robbery. He also alleges that the police officers, upon learning that he was not the robbery suspect sought, falsely charged him with felonious assault and with resisting arrest, thus subjecting him to criminal prosecution.

Defendants, on the other hand, deny that the police officers failed to identify themselves, assaulted Singleton or ever made an arrest for robbery. They contend that plaintiff was properly arrested for the crimes of assault, resisting arrest and obstructing governmental administration. Defendants concede, however, that once Singleton was arrested for these crimes and taken to the station house it was established that he did not commit the robbery which gave rise to the incident.

On November 15, 1975, Singleton was arraigned on the criminal charges and his subsequent trial in the Criminal Court of the City of New York on those charges ended in a hung jury on March 31, 1976. On June 14, 1976, with Singleton's consent that court ordered that the action be "adjourned in contemplation of dismissal." N.Y.Crim.Proc.Law § 170.55.[1] The action was finally dismissed in accordance with § 170.55 on December 16, 1976.

Singleton subsequently commenced an action in state court, which is apparently still pending, alleging assault, false arrest and malicious prosecution. Thereafter, on February 9, 1979, he commenced the present federal action under § 1983, alleging that the defendants' conduct deprived him of "rights secured by the Constitution and laws of the United States," by assaulting

---

* Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. N.Y.Crim.Proc.Law § 170.55 provides:

"1. Upon or after arraignment in a local criminal court upon an information, a simplified traffic information, a prosecutor's information or a misdemeanor complaint, and before entry of a plea of guilty thereto or commencement of a trial thereof, the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, order that the action be 'adjourned in contemplation of dismissal,' as prescribed in subdivision two.

"2. An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice. Upon issuing such an order, the court must release the defendant on his own recognizance. Upon application of the people, made at any time not more than six months after the issuance of such order, the court must restore the case to the calendar and the action must thereupon proceed. If the case is not so restored within such six months period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice."

him on November 14, 1975, by arresting him without probable cause or a warrant on the same date, by causing him to be arraigned on false charges on January 14, 1976, and by causing him to be brought to trial on the false charges which ended in a dismissal of those charges on December 14, 1976. The complaint seeks $5,000,000 in damages.

Defendants moved to dismiss on the ground that the action was time–barred. The district court found that the § 1983 action was governed by the three–year limitation period imposed by N.Y.C.P.L.R. § 214(2), which applies to actions "to recover upon a liability . . . created or imposed by statute." Finding that Singleton's § 1983 cause of action for false arrest and assault accrued on November 14, 1975, the date on which the incident occurred, the court concluded that these claims were time–barred since Singleton commenced his action more than three years after that date. As to the malicious prosecution claim, which allegedly arose on December 16, 1976, when the prosecution of Singleton was terminated, the court concluded that although the claim was timely filed, it must be dismissed for failure to allege that the state court prosecution had terminated in favor of plaintiff, as required by *Cardi v. Supermarket General Corp.*, 453 F.Supp. 633 (S.D.N.Y.1978). From the judgment dismissing his complaint, Singleton appeals.

## DISCUSSION

■ Since Congress has not established a federal statute of limitations for actions brought in federal court under § 1983, we are instructed to apply the state statute of limitations most appropriate to § 1983 actions. *Board of Regents of Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Following this man-

date we have held that the three–year limitations period imposed by N.Y.C.P.L.R. § 214(2), which applies to actions to recover upon a liability created by statute, governs § 1983 suits brought against individuals in federal courts in New York. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 449 (2d Cir. 1980); *Leigh v. McGuire,* 613 F.2d 380, 382 (2d Cir. 1979), *vacated and remanded for further consideration,* —— U.S. ——, 100 S.Ct. 2935, 64 L.Ed.2d 820 (May 27, 1980); *Meyer v. Frank,* 550 F.2d 726, 728 (2d Cir.), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977); *Kaiser v. Cahn,* 510 F.2d 282, 284 (2d Cir. 1974).

Section 214(2) has also been held by us to govern § 1983 actions against municipalities. *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 449. We reasoned in *Quinn* that "[t]o create different limitations periods for two similarly situated classes of defendants would create a distinction without a difference, and would engender unnecessary confusion for litigants and judges alike." 613 F.2d at 449.

Defendants–appellees here contend on the basis of the Supreme Court's recent decision in *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that the appropriate state statute of limitations is not N.Y.C.P.L.R. § 214(2) but either N.Y.Gen. Municipal Law § 50–i(1), which specifies a one–year, 90–day limitations period for actions against municipalities for wrongful conduct,[2] or N.Y.C.P.L.R. § 215(3), which fixes a one–year limitations period for "an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander . . . ." Their argument is that since the Court in *Chapman* stated that § 1983 "does not provide any substantive rights at all," 441 U.S. at 618, 99 S.Ct. at 1916, but only furnishes a remedy for enforcement of federal constitutional rights,

---

2. N.Y.Gen.Mun.Law § 50–i(1) reads in pertinent part:

"1. No action or special proceeding shall be prosecuted or maintained against a city . . . for personal injury or damage to real or personal property alleged to have been sustained by reason of the negligence or wrong-

ful act of such city . . . or of any officer, agent or employee thereof . . . unless . . . (c) *the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based."*

an action under § 1983 is not one "to recover upon a liability . . . created or imposed by statute" within the meaning of § 214(2), which does not apply to "statutory provisions which provide only additional remedies or standing [but] do not create or impose new obligations," *State v. Cortelle Corp.*, 38 N.Y.2d 83, 378 N.Y.S.2d 654, 655, 341 N.E.2d 223, 224 (1975). However, in holding in *Quinn, supra*, that such actions are governed by § 214(2) we questioned earlier suggestions that N.Y.Gen. Municipal Law § 50–i(1) establishes "the appropriate limitations period for § 1983 suits against municipalities," 613 F.2d at 449 n. 7; see *Fine v. City of New York*, 529 F.2d 70, 76 (2d Cir. 1975); *Lombard v. Board of Education*, 440 F.Supp. 577 (E.D.N.Y.1977); *Adekalu v. New York City*, 431 F.Supp. 812 (S.D.N.Y.1977). In any event, for reasons stated below we need not decide in this case whether *Quinn* must be reconsidered in the light of the Supreme Court's decision in *Chapman*.[3]

The only other possibly relevant state statute of limitations is N.Y.C.P.L.R. § 213(1), which governs "an action for which no limitation period is specifically prescribed by law." Section 213(1) has generally been understood to govern actions for equitable relief, not actions for damages.[4] The Practice Commentaries to the section state:

"[Section 213(1)] corresponds with CPA § 53 [its predecessor], and reduces the residual statute of limitations from 10 to 6 years. *This period, which governs actions in equity*, had always been unnecessarily long. It had created many problems by encouraging tardy plaintiffs whose causes of actions were barred at law to conjure up improbable theories of equity to gain the benefit of the longer statute . . . ." (Emphasis supplied).

Although § 213(1) is not by its terms limited to equitable actions, we must in choosing among state statutes of limitations to be applied in federal actions look to the state court interpretations of the statutes to "see where the claim fits into the state scheme." *Klein v. Bower*, 421 F.2d 338, 344 (2d Cir. 1970). As so interpreted this longer period for equity actions is clearly unavailable where full relief to plaintiff can be granted at law. *Klein v. Bower*, 421 F.2d at 344 (1970); *Gilbert v. Meyer*, 362 F.Supp. 168, 172 (S.D.N.Y.1973). Here plaintiff seeks only damages and makes no claim for equitable relief. Accordingly § 213(1) must be eliminated as a statute that might be applied in the present case.

Appellant agrees that the present action is governed by N.Y.C.P.L.R. § 214(2), requiring that it be commenced within three years from the date of accrual. However, he contends that his claims for false arrest and assault did not accrue on November 14, 1975, as determined by the district court, but rather on December 16, 1976, when the state prosecution terminated. Alternatively, appellant argues that the applicable state statute of limitations should have

---

3. In *Regan v. Sullivan*, 557 F.2d 300 (2d Cir. 1977), we exhaustively analyzed all other possible New York State limitations periods in the context of a *Bivens*-type suit against federal officers. We need not repeat that discussion here except to note that we found § 215(3) inapplicable to a suit alleging an unconstitutional search and seizure on the ground that a deprivation of a constitutional right is significantly more serious than a violation of a common law or state right and thus warrants a different remedy.

We likewise found inapplicable N.Y.C.P.L.R. § 215(1), which provides a one–year limitations period for "an action against a sheriff, coroner, or constable, upon a liability incurred by him doing an act in his official capacity." Defendants do not suggest it to be applicable here.

*Regan*, however, was decided prior to *Chapman*, leaving open the question of whether the latter case may require reconsideration of the applicability of § 214(2) and, if so, what other state statute is appropriate.

4. The relevant legislative history of § 213(1) states:

"This provision is adapted from section 53 of the civil practice act. Its period, sometimes referred to as a 'residual period,' is generally applicable to such equity actions as an action to reform an instrument, or any other action where no period is expressly prescribed. The present ten–year period is unnecessarily long and has been reduced to five years." Leg.Doc. Vol. 1, No. 13, 181st Sess. at 67 (1958).

been tolled during that prosecution. We reject both contentions.

 Under New York law a claim for assault accrues at the time of the assault and one for false arrest at the time when plaintiff is released from jail, see, e. g., *Dailey v. Smiley*, 65 App.Div.2d 915, 410 N.Y.S.2d 468 (1978). However, federal law, which governs the date of accrual of federal claims such as those asserted here, *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974), "establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977). November 14, 1975, was the time at which plaintiff knew of his injury arising from the alleged assault and false arrest. The applicable statutory period therefore commenced running on that date. Singleton suggests no reason why the time for accrual should be other than November 14, 1975.[5]

Singleton next contends, apparently for the first time, that the limitations period should be tolled during the period in which the state criminal prosecution was pending against him. The Supreme Court has recently held that state tolling rules, like state limitations periods, govern federal actions brought under § 1983 except when inconsistent with the federal policy underlying § 1983. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

New York has codified the circumstances under which limitations periods may be tolled. The general rule is set forth unambiguously in N.Y.C.P.L.R. § 201: "An action ... must be commenced within the time specified in this article.... No court shall extend the time limited by law for the commencement of an action." Although the statute codifies a number of the tolling rules developed at common law,[6] there is no provision for tolling the time for filing a cause of action during the period when a criminal prosecution is pending against the plaintiff. The New York legislature has thus determined that the policy of repose underlying the statute of limitations outweighs any burden upon plaintiff arising from his being required to file a cause of action while he is subject to state prosecution.

Nor do we find any inconsistency between the state policy and the federal policy underlying § 1983. In order to gauge consistency, we must identify and compare the respective policies. On the one hand, the Supreme Court has recognized that state policies of repose are "fundamental to a well–ordered judicial system" and are not "disfavored in federal law." *Board of Regents v. Tomanio, supra*, 446 U.S. 478 at 487, 100 S.Ct. 1790, at 1796, 64 L.Ed.2d 440. Meanwhile, the federal policy underlying § 1983 includes compensation of persons injured by a deprivation of federal rights and the prevention of abuses of power by those acting under color of state law. *Robertson v. Wegmann*, 436 U.S. 584, 591, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978). Those federal policies, however, are not undermined by the running of the applicable New York limitations period from the date of arrest. As in *Board of Regents v. Tomanio*, "plaintiffs can still readily enforce their claims, thereby recovering compensation and fostering deterrence, simply by commencing their actions within three years."

---

**5.** Singleton also seems to suggest that § 1983 suits may not contain more than one cause of action, on the basis of which he argues that his claim should be considered to have accrued on December 16, 1976, the date when the state prosecution terminated and his claim for malicious prosecution accrued. We disagree. The law of this Circuit is "well settled that a § 1983 complaint may contain more than one cause of action and thus may require the borrowing and application of more than one state statute of limitations." *Williams v. Walsh*, 558 F.2d 667, 670 (2d Cir. 1977). We see no reason why numerous claims for relief under § 1983 should be considered to have accrued on the same date.

**6.** See, e. g., N.Y.C.P.L.R. § 207 (tolling during defendant's absence from state or residence under false name), and § 208 (tolling during period in which plaintiff is under a disability such as infancy, insanity, or imprisonment). During the state prosecution against him, Singleton was not in custody.

100 S.Ct. at 1797. Nothing prevented Singleton from bringing suit during the period when the criminal prosecution against him was pending.

In his scholarly dissent Judge Weinstein acknowledges that under federal law "accrual for section 1983 purposes occurs at the time of the assault or when the plaintiff is released on bail after the arrest." (p. 202). Nevertheless, he then advances a novel theory to the effect that the separate wrongs in this case should be treated for accrual purposes as a "single transaction" which was not completed until December 16, 1976, when the state criminal proceedings against Singleton were dismissed. We find no authority supporting this theory.[7] Indeed, the settled law is to the contrary.

■ Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as "a single series of interlocking events" does not postpone accrual of claims based on individual wrongful acts. The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time–bar, which is to preclude the resuscitation of stale claims. As we stated in *Rutkin v. Reinfeld*, 229 F.2d 244, 252 (2d Cir.), *cert. denied sub nom. Kaplow v. Reinfeld*, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956):

> "The person harmed by the conspiracy may bring suit as soon as the damage to him is inflicted; he obviously need not wait until the termination of the conspiracy which caused it. It is at the time of injury that the 'right to relief by action' arises and the statute therefore begins to run at the moment such injury occurs."

■ The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether that act is labelled a tort or a violation of § 1983. *Korry v. International Telephone & Telegraph Corp.*, 444 F.Supp. 193 (S.D.N.Y. 1978). Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the

---

**7.** The various Federal Rules of Civil Procedure cited by Judge Weinstein (10(b), 13(a), 13(g), 14(a), 15(c), 18, 20(a), 24(a)), which require joinder of parties and of claims and counterclaims arising from a single transaction or occurrence, are irrelevant to the issue at hand. The salutary principle that related claims and parties should be joined in a single action, which avoids duplication and waste of judicial resources, has nothing to do with the question of when each claim accrues for statute of limitations purposes. To make joinder of claims the test, as is suggested by the dissent, would enable a pleader to resuscitate a barred, stale claim merely by joining it with a timely filed claim and thus defeat the purpose of the statute of limitations.

Decisions cited by Judge Weinstein do not support the proposition that clearly recognizable separate wrongs may somehow or other be amalgamated for statute of limitations purposes into a single transaction by giving them the label of a "civil rights claim." *Kirkland v. City of Buffalo Board of Education*, 622 F.2d 1066, 1068 (2d Cir. 1980), has nothing to do with any statutory time–bar. It held that an employee was not required to obtain more than one "right to sue" letter with respect to an alleged discriminatory refusal to hire in order to sue under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq. Mitchell v. United Parcel Service Inc.*, 624 F.2d 394, 397 (2d Cir. March 3, 1980), held that since the claim there was based upon breach of a collective bargaining agreement, it was governed by New York's six–year statutory time–bar applicable to suits for breach of contract rather than the 90–day period prescribed for suits to vacate an arbitration award. In the present case Singleton does not question the applicability of the three–year period fixed by § 214(2); the issue is when the claim accrued. In *Smith v. Cremins*, 308 F.2d 187 (9th Cir. 1962), the court did state that § 1983 created rights which may differ from common law torts but the acts complained of there (assault, detention, conversion) all were committed within a period of 10 minutes, unlike the present case where the alleged malicious prosecution did not occur until months after the time–barred alleged assault and false imprisonment. Moreover, considerable doubt is cast upon *Mitchell* by more recent decisions of the Supreme Court directing us to apply the state statute of limitations that would govern an analogous state action.

wrong becomes apparent. This may occur, for instance, where a person contracts silicosis as the result of ingesting infinitesimally small amounts of coal dust over a period of years, *Sadowski v. Long Island Railroad*, 292 N.Y. 448, 55 N.E.2d 497 (1944), or gradually becomes disabled as the result of operating a defective hammer, *Fowkes v. Pennsylvania Railroad*, 264 F.2d 397 (3d Cir. 1959). See also *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 457 F.Supp. 765, 770 (E.D.N.Y.1978), *affd. as to this holding*, 604 F.2d 737, 744–46 (2d Cir. 1979); *Holdridge v. Heyer–Schulte Corp.*, 440 F.Supp. 1088, 1096 (N.D.N.Y.1977). But no such claim is made here.

Singleton contends that it would have been fruitless for him to have commenced his § 1983 action while the criminal prosecution was pending since there was a possibility that the federal district court would dismiss the § 1983 action on the ground that it would be inappropriate for a federal court to adjudicate constitutional issues which are relevant to the disposition of pending state criminal charges. See *Clark v. Zimmerman*, 394 F.Supp. 1166 (M.D.Pa.1975). These fears are unfounded. As suggested by the Fifth Circuit, the better course in situations where the district court feels compelled to abstain is to stay, rather than dismiss, the § 1983 action so that the plaintiff is protected from a possible statute of limitations bar to the § 1983 suit. *Conner v. Pickett*, 552 F.2d 585 (5th Cir. 1977) (per curiam); see also *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975) (§ 1983 suit stayed "by agreement of counsel" pending outcome of state criminal proceedings); *Fulford v. Klein*, 529 F.2d 377, 382 (5th Cir. 1976), *affd. en banc*, 550 F.2d 342 (5th Cir. 1977). Accord, *Zurek v. Woodbury*, 446 F.Supp. 1149, 1152 (N.D.Ill.1978).

 Accordingly, we hold that the statute of limitations was not tolled in this case. Since Singleton's claims for assault and false imprisonment accrued on November 14, 1975, and this action was not commenced until February 9, 1979, more than three years later, these claims are barred by all possibly applicable state statutes of limitation, including N.Y.C.P.L.R. § 214(2) (three years) and, even assuming that *Chapman* calls for application of a different statute, by N.Y.C.P.L.R. § 215(3) (one year), and N.Y.Gen. Municipal Law § 50–i (one year and 90 days).

 Turning to Singleton's malicious prosecution claims, it is undisputed that this claim accrued on December 16, 1976, and that it was therefore timely filed. Under the common law, however, it is well–settled that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor. Restatement (Second) of Torts § 658 (1977). The district court reasoned that an "adjournment in contemplation of dismissal" pursuant to N.Y.Crim.Proc.Law § 170.55 did not constitute a termination in favor of appellant. Despite appellant's protestations to the contrary, the district court's conclusion is correct and adequately supported. *Cardi v. Supermarket Corp.*, 453 F.Supp. 633 (E.D.N.Y.1978); *Kenul v. Hollander*, 86 Misc.2d 466, 382 N.Y.S.2d 650 (Dist.Ct.Nassau Cty. 1976). Proceedings are "terminated in favor of the accused" only when their final disposition is such as to indicate the accused is not guilty, Restatement (Second) of Torts § 660, Comments a & b (1977). An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt.

Nor are we persuaded that § 160.50 of the New York Criminal Procedure Law, relied upon heavily by our dissenting colleague, converts a dismissal under § 170.55 into an acquittal or determination that the plaintiff was not guilty, which would permit him to sue for malicious prosecution. In the first place, a dismissal pursuant to § 170.55 is not the equivalent of a verdict or finding that the defendant is not guilty of the offense charged against him, as is demonstrated in the present case by the jury's inability to reach a verdict, thus confirming that there surely was probable cause for his prosecution and indicating at least a real

possibility that upon retrial he might be convicted.

 Section 170.55 creates a procedure not unlike probation, designed as a "special break, given usually to first offenders." *Kenul v. Hollander*, 86 Misc.2d 466, 382 N.Y.S.2d 650 (Dist.Ct.Nassau County 1976); see, generally, Pirro, *Adjournment in Contemplation of Dismissal: Criminal Procedure Law Section 170.55*, 38 Alb.L.Rev. 223, 231–32 (1974) (hereinafter cited as *Adjournment*). The six–month hiatus between adjournment and dismissal is especially significant: It is a period of observation, during which time the defendant's behavior may be observed to determine whether the prosecutor's acquiescence in the adjournment was justified. The prosecutor's decision to restore the case to the calendar is totally discretionary and need not be based on factors relating to the defendant's original innocence or guilt. As the New York CPL Practice Commentary puts it, a dismissal is granted at the end of the period "[i]f the defendant behaved himself." The fact that it is common for judges granting adjournments in contemplation of dismissal to establish behavioral requirements which the defendant must meet during the adjournment period in order to avoid having the case restored to the calendar, see *Adjournment, supra*, at 235–39, confirms that an adjournment in contemplation of dismissal is far from being "in all respects favorable to the defendant."

Section 160.50, by classifying a § 170.55 dismissal as "in favor" of the defendant and permitting the arrest and prosecution to be deemed a nullity, merely confirms the "special break for first offenders" conferred by § 170.55 itself. By erasing the stigma that might otherwise be borne by the defendant as a result of the prosecution, the statute does not authorize a finding of "not guilty;" it simply permits the court to expunge the record against him, just as is authorized by state and federal laws with respect to juvenile delinquents or youthful offenders who have committed criminal acts.[8] If an adjournment in contemplation of dismissal were held to be a result favorable to the defendant for purposes of bringing an action for malicious prosecution, fewer prosecutors would be willing to consent to such adjournments. No purpose would be served in dismissing the criminal case if the issue of guilt or innocence were in any event to be litigated in a civil suit. The more prudent course, which would be less wasteful to the parties and the court, would be to bring the pending criminal case to trial. This is confirmed by the growing unsuccessful efforts by prosecutors to condition the granting of adjournments on the defendant's agreement to waive his rights against the government, see, e. g., *People v. Wilmot*, 428 N.Y.S.2d 568 (Crim.Ct.N.Y.1980); *Kurlander v. Davis*, 427 N.Y.S.2d 376 (Sup. Ct.Monroe Cty.1980).

 There remains the question of whether a § 1983 claim for deprivation of civil rights through malicious prosecution

8. For instance, despite the fact that one who is adjudicated a juvenile delinquent has been found guilty of committing the criminal act of which he was accused, New York, in order to avoid the offender's being handicapped by the adjudication, takes strong measures to protect him from the consequences. Section 782 of the N.Y.Family Court Act provides that:
"No adjudication under this article shall operate as a forfeiture of any right or privilege or disqualify any person from subsequently holding public office or receiving any license granted by public authority."
Section 783 provides that:
"Neither the fact that a person was before the family court under this article for a hearing nor any confession, admission or statement made by him to the court or to any

officer therefor in any stage of the proceeding is admissible as evidence against him or his interests in any other court."
Police records generated in juvenile proceedings are segregated from those involving the arrests of adults, *id.* at § 784, and all fingerprints and photographs generated pursuant to juvenile delinquency adjudications must be destroyed by the police department when and if the individual reaches the age of 21 without having suffered any criminal convictions. *Id.* at § 753–b(4).
Congress has enacted similar laws with respect to federal youthful offenders. See, e. g., 18 U.S.C. § 5021 automatically setting aside youthful offender convictions upon certain conditions.

may be stated without alleging and proving that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged. We believe that such proof is essential. The essence of the § 1983 claim is the alleged groundless prosecution, without which there would not be any basis for the claim. A prosecution based on probable cause which results in a hung jury, as was the case here, does not deprive the defendant of civil rights within the meaning of § 1983. Without proof that the criminal prosecution based on probable cause was terminated in defendant's favor no federal claim exists. To hold otherwise would permit a defendant to relitigate the issue of probable cause by way of a § 1983 action, despite the state court's determination of that issue against him after full and fair consideration of the evidence, thus posing the prospect of harassment, waste and endless litigation, contrary to principles of federalism.

 Our decision is therefore consistent with decisions cited by the dissent (pp. 199–201) to the effect that state tort law does not define or limit the scope of liability under § 1983, a principle with which we do not disagree. A § 1983 complaint must still allege a wrong to the plaintiff. This requirement is not met by a claim seeking federal review of a state prosecution on grounds of unfairness, absent proof of denial of due process or a finding that the defendant was maliciously prosecuted upon a charge of which he was found not guilty. The present case is governed by the principle stated by the Fourth Circuit in *Tucker v. Duncan*, 499 F.2d 963 (4th Cir. 1974), where the court, in dismissing a § 1983 malicious prosecution action because under North Carolina law a *nol–pros* obtained by the defense attorney from the prosecutor did not constitute a favorable termination, reasoned that it was "not inappropriate to borrow from state law a developed body of rules governing actionable wrongs and a procedural bar to the assertion of a federal claim of relative triviality." *Id.* at 965 n. 1. The common law rule that termination of the earlier proceedings in favor of the accused is an essential element of a malicious prosecution claim has generally been adopted and applied by federal courts, *Sullivan v. Choquette*, 420 F.2d 674 (1st Cir. 1969), *cert. denied*, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970); *Morrison v. Jones*, 551 F.2d 939 (4th Cir. 1977), even with respect to federal tort claims, *Dellums v. Powell*, 566 F.2d 167, 191 n. 65 (D.C.Cir.), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1977); *United States v. Levering*, 446 F.Supp. 997 (D.Del.1978). See also D. Prosser, *Torts* § 119, at 835 and § 120, at 853 (4th ed. 1971); Restatement (Second) of Torts § 674 (1977); 52 Am.Jur.2d *Malicious Prosecution* §§ 6, 29 (1970); 54 C.J.S. *Malicious Prosecution* § 54 (1948); and Annot., 14 A.L.R.2d 264, 276 (1950). We see nothing in the common law which undermines the federal policies fostered by § 1983. Where, as in the present case, the prior proceeding ended in a hung jury and Singleton's guilt was left open, the claim must fail.

 With respect to the defendant City of New York, there is an additional reason why Singleton's § 1983 claim must be dismissed. Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be sued for damages under § 1983 only where the constitutional violations have been committed pursuant to an official policy or custom, 436 U.S. at 690–91, 98 S.Ct. at 2036. No such policy or custom is alleged here. Moreover, in *Turpin v. Mailet*, 619 F.2d 196 (2d Cir. 1980), we noted that an "official policy" cannot ordinarily be inferred from a single incident of illegality, such as a first false arrest or excessive use of force, absent some additional circumstances.

The judgment of the district court is affirmed.

WEINSTEIN, District Judge (dissenting):

Based on the pleadings, which must at this stage be construed most favorably to the plaintiff, and the theory upon which the complaint was dismissed, the facts and law

may be summarized as follows: Plaintiff, a black man, was arrested in a restaurant without cause under humiliating circumstances and beaten on November 14, 1975. Defendant policemen, chagrined and frustrated because they had no basis for the arrest, and in order to punish plaintiff for protesting, falsely charged him with a felonious assault upon themselves and with resisting arrest. On November 15, 1975, plaintiff was arraigned as a result of defendants' false charges. Despite defendants' malicious perjury at trial, the jury was unable to reach a verdict. All actions of defendants were taken solely because of plaintiff's race and to deprive him of his constitutional rights.

On July 14, 1976, the state criminal court ordered the prosecution adjourned in contemplation of dismissal and it was dismissed on December 16, 1976. Plaintiff commenced this civil rights action on February 9, 1979 pursuant to section 1983 of title 42 of the United States Code, alleging deprivation of rights secured by the Constitution and laws of the United States.

According to the federal law, as now interpreted, plaintiff's complaint, though clearly sufficient on the merits, must be dismissed because his claim for relief is divided into three discrete causes of action for purposes of the applicable state statutes of limitation. The first and second, for false arrest and assault, were barred on November 14, 1978, three years after the arrest and beatings. The third, for malicious prosecution, although timely, was insufficient because the result was not favorable to plaintiff—even though it resulted in a dismissal of all criminal charges against him and destruction of all photographs, fingerprints and other like materials and the sealing of other records—and, under New York law no cause of action arises if the criminal proceedings do not eventuate in plaintiff's favor.

## I.

### GENERAL CONSIDERATIONS

This is a curious result. Plaintiff is denied redress for a presumptively valid claim. Others in a like situation are encouraged to bring 1983 actions before the state criminal action is dismissed and to defend to the bitter end rather than accept voluntary dismissals.

The legal conclusions are inconsistent with a number of legal principles. First, section 1983 of title 42 should be liberally construed as remedial legislation designed to protect the weak and oppressed—and particularly blacks, who most needed protection when the statute was adopted—against lawless actions by policemen. Second, it is a federal remedy that is being sought, and even if state statutes of limitations are received as part of the federal enforcement scheme, their categories cannot be rigidly applied where this would frustrate the federal remedial, statutory and common law. Third, federal procedure emphasizes the whole "transaction" and "claims for relief," not the pleading of facts upon which are predicated discrete and separable "causes of action," a theory still extant in the state's statute of limitations. Fourth, federal civil cases encroaching on pending state criminal proceedings should be discouraged on comity grounds where possible pursuant to the spirit of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 271 L.Ed.2d 669 (1971). Fifth, federal action unnecessarily frustrating state criminal procedures designed to avoid burdensome criminal trials and unnecessary criminal stigmatizations should be avoided. Sixth, the law should take account of the fact that the people who bring these civil rights cases in the federal courts often proceed *pro se*, are ignorant of the niceties of state and federal practice, and lack the contacts with the legal profession that the more well–to–do and assured of our society rely on to prevent having claims barred by statutes of limitations. And seventh, every defendant in a criminal case and every defense lawyer would consider it a victory, not a defeat, to have a case dismissed without the necessity for a trial and particularly under a statutory scheme that requires destruction of all photographs and fingerprints and sealing of all agency records showing that a prosecu-

tion had ever taken place. Federal law should not require such flouting of policy, good practice and common sense.

## II.

### DISMISSAL OF STATE CRIMINAL PROCEEDING WAS FAVORABLE TO PLAINTIFF

We turn first to the question of whether the dismissal of state criminal proceedings was favorable, permitting a 1983 action by analogy to a state malicious prosecution claim. Under New York law, and, *a fortiori*, under federal law, terminating a criminal proceeding after adjournment in contemplation of dismissal is in all respects favorable to the defendant.

Section 170.55 of New York Criminal Procedure Law describes the process succinctly:

1. Upon or after arraignment in a local criminal court ... the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, order that the action be "adjourned in contemplation of dismissal," as prescribed in subdivision two.

2. An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice. Upon issuing such an order, the court must release the defendant on his own recognizance. Upon application of the people, made at any time not more than six months after the issuance of such order, the court must restore the case to the calendar and the action must thereupon proceed. If the case is not so restored within such six months period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.

New York's adjournment in contemplation of dismissal is unlike other pretrial diversion programs which are premised upon an explicit or implicit admission of guilt. *See, e. g.*, Ark.Stat.Ann. § 43–1232 (Supp.1977) (guilty plea required); Colo. Rev.Stat.Ann. § 16–7–401(1) (Supp.1978) (rehabilitation program required); Conn. Gen.Stat.Ann. § 54–76p (West Supp.1979) (same); Wash.Rev.Stat.Ann. § 9.95A.030 (1977) (same). *See, generally*, Zablotsky, An Analysis of State Pretrial Diversion Statutes, 15 Colum.J.Law and Soc.Prob. 1 (1979); Note, Pretrial Diversion From the Criminal Process, 83 Yale L.J. 827, 833–834 (1974). In carrying out its program of equating a dismissal under section 170.55 with an acquittal, New York has adopted two other provisions that ensure that the defendant is restored to the status he occupied prior to the arrest and prosecution—complete innocence. They require destruction or sealing of "all" official records of the prosecution. And one provision says explicitly that "a criminal action or proceeding against a person shall be considered terminated in favor of such person." § 160.50(2). It is hard to see how the state could have spoken more clearly.

A reading of paragraphs (b) and (c) of subsection (2) of 160.50 shows that an order under section 170.55 is equated with a "complete acquittal." The ancillary provisions state (emphasis supplied):

§ 160.50. Order upon termination of criminal action in favor of the accused.

1. *Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision two of this section,* unless the district attorney upon motion with not less than five days notice to such person or his attorney demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person or his attorney determines that the interests of justice require otherwise and states the reasons for such determination on the record, the court wherein such criminal action or proceeding was terminated shall enter an order, which shall immediately be served by the clerk of the court upon the commissioner of the division of criminal justice services

and upon the heads of all police departments and other law enforcement agencies having copies thereof, directing that:

(a) every photograph of such person and photographic plate or proof, and all palmprints and fingerprints taken or made of such person pursuant to the provisions of this article in regard to the action or proceeding terminated, except a dismissal pursuant to section 170.56 or 210.46 of this chapter, and all duplicates and copies thereof, shall forthwith be returned to such person, or to the attorney who represented him at the time of the termination of the action or proceeding, at the address given by such person or attorney during the action or proceeding, by the division of criminal justice services and by any police department or law enforcement agency having any such photograph, photographic plate or proof, palmprint or fingerprints in its possession or under its control;

(b) any police department or law enforcement agency, including the division of criminal justice services, which transmitted or otherwise forwarded to any agency of the United States or of any other state or of any other jurisdiction outside the state of New York copies of any such photographs, photographic plates or proofs, palmprints and fingerprints, including those relating to actions or proceedings which were dismissed pursuant to section 170.56 or 210.46 of this chapter, shall forthwith formally request in writing that all such copies be returned to the police department or law enforcement agency which transmitted or forwarded them, and upon such return such department or agency shall return them as provided herein, except that those relating to dismissals pursuant to section 170.56 or 210.46 of this chapter shall not be returned by such department or agency;

(c) all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office be sealed and not made available to any person or public or private agency; and

(d) such records shall be made available to the person accused or to such person's designated agent, and shall be made available to (i) a prosecutor in any proceeding in which the accused has moved for an order pursuant to section 170.56 or 210.46 of this chapter, or (ii) a law enforcement agency upon ex parte motion in any superior court, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it, or (iii) any state or local officer or agency with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license.

2. *For the purposes of subdivision one of this section, a criminal action or proceeding against a person shall be terminated in favor of such person where*:

(a) an order dismissing the entire accusatory instrument against such person pursuant to article four hundred seventy was entered; or

(b) *an order to dismiss the entire accusatory instrument against such person pursuant to section 170.30, 170.50, 170.55, 170.56, 170.75, 180.70, 210.20 or 210.46 of this chapter or section 81.25 of the mental hygiene law was entered* or deemed entered and the people have not appealed from such order or the determination of an appeal or appeals by the people from such order has been against the people; or

(c) a verdict of complete acquittal was made pursuant to section 330.10 of this chapter; or . . . .

§ 160.60. Effect of termination of criminal actions in favor of the accused. *Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision two of section 160.50 of this chapter, the arrest and prosecution shall be deemed a nullity and the accused shall be restored,*

*in contemplation of law, to the status he occupied before the arrest and prosecution.* The arrest or prosecution shall not operate as a disqualification of any person so accused to pursue or engage in any lawful activity, occupation, profession, or calling. Except where specifically required or permitted by statute or upon specific authorization of a superior court, no such person shall be required to divulge information pertaining to the arrest or prosecution.

We have found no New York case holding that a section 170.55 dismissal precludes a claim for malicious prosecution. While *obiter dictum* in one lower New York court suggests that it viewed such a dismissal as not favorable to plaintiff for that purpose, the holding of the court implies the opposite, for it ruled that a suit for malicious prosecution may not be brought *during the six month period before the case is finally dismissed. Kenul v. Hollander,* 86 Misc.2d 466, 382 N.Y.S.2d 650 (D.C.Nass.Co.1976). *Cf. Cardi v. Supermarket Corp.,* 453 F.Supp. 633 (E.D.N.Y.1978) (speaking of *Kenul,* "Nassau County District Court, also held that a plaintiff who had accepted an ACOD could not maintain a malicious prosecution claim").

It is no disrespect to the Nassau County District Court to suggest that even in a true *Erie* situation, as in a diversity case, federal courts would hardly feel bound by a statement of that court on the state of New York law, particularly when it is contrary to the plain words of the statute. As the Supreme Court noted in *Commissioner of Internal Revenue v. Bosh,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (emphasis in original):

> Even in diversity cases this Court has further held that while the decrees of "lower state courts" should be "attributed some weight * * * the decision [is] not controlling * * *" where the highest court of the State has not spoken on the point. *King v. Order of United Commercial Travelers,* [333 U.S. 153] at 160–161, 68 S.Ct. [488] at 492. And in *West v. American Tel. & Tel. Co.,* 311

U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940), this Court further held that "an intermediate appellate state court * * * is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.*" At 237, 61 S.Ct. at 183 (Emphasis supplied.). Thus, under some conditions, federal authority may not be bound even by an intermediate state appellate court ruling. It follows here then, that when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling. This is but an application of the rule of *Erie R. Co. v. Tompkins,* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] . . . .

When federal remedial law is at stake characterization of the effect of the state law for federal purposes is a matter for federal decision and policy. *See, e. g.,* C.A. Wright, Law of Federal Courts, § 60 (1976); Hart and Wechsler, Federal Courts and the Federal System, 762ff (2d Ed. by P. Bator, D. Shapiro, P. Mishkin and H. Wechsler, 1973); Hill, State Procedural Law in Federal Nondiversity Litigation, 69 Harv.L.Rev. 66, 91 (1955); *cf.* Westen and Lehman, Is There Life for *Erie* After the Death of Diversity?, 78 Mich.L.Rev. 311, 315 (1980). Thus, even were the highest court of New York to hold that a section 170.55 dismissal precluded a claim of malicious prosecution, this would not be determinative of the sufficiency of appellant's federal statutory claim that his federal constitutional rights were violated. *See, e. g.,* Bristow, § 1983: An Analysis and Suggested Approach, 29 Ark.L.Rev. 255, 276–77 (1975); Nahmod, Section 1983 and the "Background" of Tort Liability, 50 Ind.L.J. 5, 38 (1974); Note, Section 1983: An Analysis of Damage Awards, 58 Neb.L.Rev. 580, 590 (1976).

Federal courts should not "apply tort law as if with blinders respecting the federal policy involved, seemingly making tort law determinative of 1983 liability." Nahmod, Section 1983 and the "Background" of Tort

Liability, 50 Ind.L.J. 5, 12 (1974). *See also,* Bristow, § 1983: An Analysis and Suggested Approach, 29 Ark.L.Rev. 255, 276–277 (1975). State tort law principles and attendant procedures have often been modified in utilizing them through analogy when developing the details of federal 1983 common law. *See, e. g., Owen v. City of Independence,* 445 U.S. 622, 680, 100 S.Ct. 1398, 1430, 63 L.Ed.2d 673 (1980) (Powell, J., dissenting) ("for municipalities in almost 90% of our jurisdictions, the Court creates broader liability for constitutional deprivations than for state-law torts."); *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment . . . is largely irrelevant to his claim of deprivation of liberty without due process of law."); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (failure of common law to recognize an analogous cause of action is not sufficient reason to deny compensation to § 1983 plaintiff); *Howell v. Cataldi,* 464 F.2d 272, 278 (3rd Cir. 1972) ("A right to relief under § 1983 is not exclusively predicated upon a breach of duty imposed by the law of torts."); *Willis v. Reddin,* 418 F.2d 702, 704 (9th Cir. 1969) (short state statute of limitations will not be applied where effect is to burden federally created right); *McLaughlin v. Tilendis,* 398 F.2d 287, 290 (8th Cir. 1968) (Illinois Tort Immunity Act could not protect defendant from action grounded in § 1983); *Jobson v. Henne,* 355 F.2d 129, 133 (2nd Cir. 1966) (in § 1983 suits, common law doctrines of immunity not a bar).

> It would indeed be the purest coincidence if the state remedies for violations of common–law rights by private citizens were fully appropriate to redress those injuries which only a state official can cause and against which the Constitution provides protection.

*Monroe v. Pape,* 365 U.S. 167, 196 n. 5, 81 S.Ct. 473, 489 n. 5, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring), *overruled in part on other grounds, Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Supreme Court has been very careful not to lock itself into a rule that would require it to slavishly follow state categorizations in civil rights cases. As it noted in *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975):

> Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide. . . . [C]onsiderations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration.

*See also, e. g., Board of Regents v. Tomania,* 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980) ("*in general,* state policies of repose cannot be said to be disfavored in federal law.") (emphasis added). Even when following state law on questions of statutes of limitations in 1983 suits, it recognizes that "considerations of federalism are quite appropriate in adjudicating federal suits based on 42 U.S.C. § 1983." *Id.* at 492, 100 S.Ct. at 1799.

This primacy of federal considerations was recognized by the Second Circuit in *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 449 (2d Cir. 1980), when it rejected the applicable short statute, N.Y. Gen.Mun.Law § 50–i(1), in a civil rights action against a municipality—even though the state courts would probably have relied upon it—in favor of the three year statute because following state law "would engender unnecessary confusion for litigants" in civil rights cases. *See also, e. g., Taylor v. Mayone,* 626 F.2d 247 (2d Cir. 1980); *Jobson v. Henne,* 355 F.2d 129, 133 (2d Cir. 1966); *Willis v. Reddin,* 418 F.2d 702, 704 (9th Cir. 1969).

Regarding a dismissal of a criminal action after an adjournment in contemplation of that dismissal as an unfavorable termination that bars plaintiff's federal civil rights claim in effect indirectly creates a wholly unwarranted irrebuttable presumption of a criminal defendant's guilt and would probably be unconstitutional if sought to be ac-

complished directly. *See, e. g., Jackson v. Virginia*, 443 U.S. 307, 316, 324, 99 S.Ct. 2781, 2786–88, 2799, 61 L.Ed.2d 560, 571, 576–77, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Jeffreis and Stephen, "Defenses, Presumptions and Burden of Proof in the Criminal Law," 88 Yale L.J. 1325, 1396 (1979). No state or federal need justifies such a harsh result. The state court has not made a determination of guilt that would be undermined by permitting pursuit of a federal civil rights remedy. The state prosecutor cannot claim an interest in protecting police officers who may have acted in bad faith and in violation of the Constitution.

It is significant that in construing section 1988 of title 42, the Civil Rights Attorneys Fees Award Act of 1976, the Supreme Court rejected the contention that settlement of a civil rights suit under section 1983 precluded the plaintiff's being deemed a prevailing party for the purpose of obtaining counsel fees. The Court noted:

> The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.

*Maher v. Gagne*, —— U.S. ——, ——, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). *A fortiori* that conclusion should be true in determining how federal 1983 common law should treat New York's dismissal of a criminal action without a full trial. For, even if plaintiff in the present action had been tried and acquitted, the verdict would have established no more than the failure of the jury to be convinced beyond a reasonable doubt of his guilt. A voluntary dismissal by the state is at least as satisfactory an indication of innocence. *Cf. Morrison v. Jones*, 551 F.2d 939, 940 (4th Cir. 1977) ("After his trial ended with a hung jury, the prosecution dismissed the charges against him;" treated as a favorable disposition despite lack of "not guilty" verdict).

The fact that there was a mistrial before dismissal is of no significance. The mistrial may have been due to one holdout prejudiced juror insisting on a guilty verdict or to one insisting on the opposite. We do not know and the law lacks curiosity on the point because it is irrelevant. For good reason it is against federal policy even to inquire into what led a jury to agree or fail to agree. *See*, Federal Rules of Evidence, Rule 606(b); 18 U.S.C. § 1508. After a mistrial, if there is another trial and an acquittal, any court would consider the acquittal a favorable termination for the purpose of determining the right to bring a state tort or federal civil rights suit. *See, e. g., Lee v. City of Mount Vernon*, 68 A.D.2d 902, 903, 414 N.Y.S.2d 215, 217 (2d Dep't. 1979), *aff'd*, 49 N.Y.2d 1041, 429 N.Y.S.2d 557, 407 N.E.2d 404 (1980). It should make no difference that, after a mistrial, there is a dismissal having exactly the same legal effect as an acquittal.

## III.

### CLAIMED VIOLATIONS BY POLICE CONSTITUTED A SINGLE TRANSACTION NO PART OF WHICH WAS BARRED BY THE STATUTE OF LIMITATIONS

Congress enacted section 1988 of title 42 in conjunction with section 1983. Section 1988 requires the application of federal law, unless it is found to be deficient, and then authorizes the use of state law so far as it is not inconsistent with the Constitution, section 1983 or other federal laws. The provision reads in part:

§ 1988. Proceedings in vindication of civil rights.

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapt-

ed to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

Accrual is a matter of federal law since there exists a body of case law concerning accrual of federal 1983 claims and—despite some theoretical considerations to the contrary—federal common law is part of the "laws of the United States" under section 1988. *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941) (state statute of limitations applicable but the time of accrual "is a federal question"); *Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947) (same). Determination of when a claim for relief accrues remains a question of federal law in section 1983 suits. *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974); *Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir. 1977). It is therefore inappropriate to be bound by any rigid interpretation of state tort, procedural or remedial law in determining the accrual date of plaintiff's federal civil rights claim.

The prevailing view is that accrual for section 1983 purposes occurs at the time of the assault or when the plaintiff is released on bail after the arrest. *Rinehart v. Locke*, 454 F.2d 313 (7th Cir. 1971). *But cf. Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir. 1977) (cause of action accrues when the plaintiff knows that the defendants have interfered with constitutional rights). In light of the facts present here, however, determination of accrual must consider the total transaction reflected in the series of events set forth in the complaint.

The transaction theory is deeply imbedded in all aspects of modern federal civil procedure—and it is federal procedure which must be followed in these federal actions. In the Federal Rules of Civil Procedure pleadings, Rule 10(b), compulsory counterclaims, Rule 13(a), crossclaims, Rule 13(g), third–party practice, Rule 14(a), relation back of amendments, Rule 15(c), joinder of claims and remedies, Rule 18, joinder of parties, Rule 20(a), and intervention as of right, Rule 24(a), are all founded upon a concept of the transaction as a basis of a claim for relief. *See, e. g.*, Clark, Two Decades of the Federal Procedural Rules, 58 Col.L.Rev. 435, 449–51 (1958). *Cf. Gomez v. Toledo*, —— U.S. ——, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (federal common law governs allocation of pleading and proof in 1983 suits; plaintiff need not plead public official's bad faith in order to state a claim for relief).

The plaintiff's claim of fourth and fifth amendment violations consisting of an assault, an unreasonable arrest, and a malicious prosecution by defendants operates as a chronicle of the specific injuries that occurred during the course of the entire transaction in question. From the moment of plaintiff's first contact with the police to the moment of dismissal there was a single series of interlocking events where, according to plaintiff's well–pleaded theory, the policemen continued to press their prosecution as part of their original unconstitutional design. As a practical matter, the plaintiff contends, their continuing attack, unknowingly aided and abetted by the criminal court system of the state, was intended as a defense against any possible claim by plaintiff of illegal arrest and beating.

Isolating the specific injuries is helpful in several ways. First, it enables the court to better identify the rights that have been infringed. Second, it establishes the time frame during which the deprivation occurred. Lastly, it provides a basis for assessing the damages suffered by the plaintiff. But this process should not be carried to the point of frustrating a valid claim.

Instances of specific injury do not provide a foundation for fractionalizing plaintiff's federal civil rights claim into several state tort causes of action. *Cf. Kirkland v. City of Buffalo Board of Education*, 622 F.2d 1066, 1068 (2d Cir. 1980) (where claims are

"directly related," procedural requirements should not act as a bar); *Mitchell v. United Parcel Service, Inc.*, 624 F.2d 394, 397 (2d Cir. 1980) (a "fractionalized approach" should not be used where a state statute of limitations is applied to a federal cause of action—the paramount interest is the effectuation of the federal policy at issue).

*Smith v. Cremins*, 308 F.2d 187 (9th Cir. 1962), is instructive. Smith was about to distribute a religious tract when he was seized by two police officers who detained him for ten minutes and destroyed some of the literature. These acts allegedly deprived him of the right to free speech and free exercise of religion, the right not to be deprived of property without due process of the law, and the right to be secure against unreasonable searches and seizures. The district court held that plaintiff stated claims for assault, battery, false imprisonment and conversion and that different statutes of limitations should be applied to determine if any, or all, were time–barred. In reversing, the Ninth Circuit determined that it was inappropriate to apply different statutes of limitations to each of several injuries that emanated from the constitutional violations claimed by plaintiff as the basis of his 1983 suit. It declared:

> Section 1983 of the Civil Rights Act clearly creates rights and imposes obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common law tort as well as to a cause of action under section 1983, but the elements of the two are not the same. The elements of an action under section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common law tort; both might be present without creating common law tort liability. As Mr. Justice Harlan recently suggested, "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though

the same act may constitute both a state tort and the deprivation of a constitutional right." [*Monroe v. Pape*, 365 U.S. 194, 196, 81 S.Ct. 473, 489, 5 L.Ed.2d 492 (1961), *overruled in part, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)] .... the single cause of action under the Civil Rights Act alleged in the complaint includes three distinct causes of action under State law and calls for the application of two distinct State statutes of limitations ... *Inconsistency and confusion would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several differing periods of limitation applicable to each state–created right were applied to the single federal cause of action.*

*Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962) (emphasis added); *see also, Walden III, Inc. v. State of Rhode Island*, 576 F.2d 945 (1st Cir. 1978) (for reasons of federal policy, it is preferable that one statute of limitations apply to all § 1983 suits); *Beard v. Robinson*, 563 F.2d 331, 337 (7th Cir. 1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978) ("... the often strained process of characterizing civil rights claims as common law torts ..." should be avoided); *Taylor v. Mayone*, 626 F.2d 247 (2d Cir. 1980); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 (2d Cir. 1980); *Gipson v. Township of Bass River*, 82 F.R.D. 122, 126 (D.N.J.1979) ("a state tort claims statute simply cannot be used here [in a § 1983 suit] to bar a federal right.").

Inconsistency and confusion result if accrual for the purposes of a federal civil rights claim is ascertained by dividing the course of conduct complained of into separate causes in wooden reliance on state tort law concepts. The notion of a continuing tort is an integral part of federal law. *Gordon v. City of Warren*, 579 F.2d 386 (6th Cir. 1978); *Briley v. State of California*, 564 F.2d 849 (9th Cir. 1977). In light of the total transaction present here the remedial and deterrent purposes of section 1983 are

furthered by providing plaintiff with a reasonable opportunity to become aware of his injuries and his rights and to pursue his federal remedy. *Cf. Kaiser v. Cahn*, 510 F.2d 282 (2d Cir. 1974) (legal and practical difficulties faced by plaintiff in instituting and prosecuting civil rights claim influence federal court's determination of accrual date and applicability of state tolling provisions in a way facilitating federal suit); *United States ex rel. Sabella v. Newsday*, 315 F.Supp. 333 (E.D.N.Y.1970) (same).

It is also appropriate to take judicial notice of the fact that the type of transaction complained of by plaintiff is not an uncommon or isolated activity. One study of police patrols indicated that "many policemen, whether or not the facts justify it, regularly follow their use of force with the charge that the citizen was assaulting a policeman or resisting arrest." Radzinowicz and Wolfgang, *Crime and Justice*, Vol. II, 149 (1977) (excerpting Reiss, Police Brutality, Answers to Key Questions). Section 1983 was designed to provide a remedy for this kind of police abuse. The modernization of pleading and practice in the federal courts was intended to make it possible to apply procedural rules with an understanding of the reality of the whole transaction.

## IV.

### POLICY OF SECTION 1983 IS TO PROTECT THOSE LEAST APT TO KNOW RIGHTS

The primary purpose of the Civil Rights Act of 1871 "... was to enforce the fourteenth amendment through the imposition of civil and criminal liabilities on those who deprived others of constitutionally protected rights." Note, Actionability of Negligence Under Section 1983 and the Eighth Amendment, 127 U.Pa.L.Rev. 533, 537–8 (1978). *See also, e. g., Monell v. Department of Social Services*, 436 U.S. 658, 683–9, 98 S.Ct. 2018, 2032–8, 56 L.Ed.2d 611 (1978); Note, Developments in the Law—Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1154 (1977); Gressman, The Unhappy History of Civil Rights Legislation, 50 Mich.L. Rev. 1323, 1357 (1952).

In both Houses, statements of the supporters of § 1 [§ 1983] corroborated that Congress, in enacting § 1 [§ 1983], intended to give a broad remedy for violations of federally protected rights.

436 U.S. at 685, 98 S.Ct. at 2033.

[T]here can be no doubt that § 1 [§ 1983] of the Civil Rights Act was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights.

436 U.S. at 700–1, 98 S.Ct. at 2041. "As remedial legislation, section 1983 is to be construed generously to further its primary purpose." *Gomez v. Toledo*, —— U.S. ——, ——, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

Application of state rules requiring the fractionalization of plaintiff's 1983 claim and the dismissal of plaintiff's due process claim directly interferes with that provision's dual policies of compensating the victims of unconstitutional action and deterring like misconduct in the future. Many of these civil rights actions are brought *pro se* by poor, ignorant and ill–advised plaintiffs. We ought not place unnecessary barriers in the way of the lowest socio–economic groups of our society, who need the most protection.

## V.

### FEDERAL LITIGATION SHOULD AVOID INTERFERENCE WITH STATE CRIMINAL PROCEEDINGS

The effect of the present holding is that those abused by the police who are still harassing them through the pressing of state criminal charges must commence a civil suit in federal court even though the pending state criminal case is unresolved. This will necessarily increase difficulties in criminal prosecution in the state courts and in civil 1983 litigations in federal courts. It is not an appropriate solution to require that the suits be brought early and then be kept in abeyance in federal court. If the federal court can do nothing until the state related criminal case is concluded it would

be best to commence the civil suit at a time the criminal case can be properly evaluated. An unfortunate result of today's decision is that defendants and prosecutors will be forced to litigate the criminal cases more fiercely rather than to utilize the softer and often more desirable techniques of the state pretrial diversion channels.

In addition to furthering the purposes and policies of section 1983, fixing accrual at the conclusion of plaintiff's state court criminal proceeding promotes the principles of comity fundamental to state–federal relations. Plaintiff's civil rights claim involves the same issues, evidence and witnesses as did his state court criminal trial. Unnecessary confusion of, interference with and delay of such proceeding might well have occurred had plaintiff been required to institute and litigate his federal civil rights claim during the prosecution of the criminal charges.

> Until the state prosecutions have been concluded, it is simply impossible to make a reasoned evaluation of plaintiff's claim.... Moreover, even if such determination were possible, it would offend the principle of comity for a federal district court to inquire into ... a pending state criminal proceeding. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).... In implementing the policy of non–interference, federal courts must focus upon the practical impact of any potential ruling ... In addition, such parallel proceeding represents a drain on already over–extended judicial resources....

*Martin v. Merola*, 532 F.2d 191, 194–5 (2d Cir. 1976). A "healthy federalism demands ... that the federal courts avoid as much as is possible intruding upon the domain which is particularly the responsibility of the state courts ..." *Williams v. Walsh*, 558 F.2d 667 (2d Cir. 1977).

Accrual of the civil rights claim at the conclusion of the criminal proceeding achieves a more efficient allocation of judicial resources since the identical issues determined in the state court proceeding need not be relitigated in the federal court. 28 U.S.C. § 1738 ("[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."). *See also, e. g., S. T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 344 N.Y. S.2d 938, 298 N.E.2d 105 (1973) (criminal conviction is conclusive proof of same issues subsequently raised in civil proceeding); Federal Rules of Evidence, Rule 803(22) (judgment of previous conviction evidence in civil suit).

## VI.

## CONCLUSION

The district court erred in relying too heavily upon details of state law in determining the accrual date and sufficiency of appellant's federal civil rights claim. Questions arising under section 1983 should be answered with a view towards advancing the national purpose of compensation and deterrence, furthering the principles of comity and effecting an efficient allocation of judicial resources.

The strong public policy in favor of providing a remedy for those whose federal constitutional and statutory rights have been deprived by individuals acting lawlessly under color of state law is a powerful one. If the federal courts serve any great purpose, it is in protecting these rights. The Supreme Court has reminded us that civil rights legislation is to be broadly construed. By narrowly interpreting state statutes of limitation and by giving niggardly scope to section 1983 federal courts may save themselves the necessity of addressing the merits of plaintiff's claim of constitutional deprivation. But this short–circuiting of federal remedies is wrong as a matter of policy, as a matter of statutory construction and as a matter of practical relationships between federal and state courts.

The judgment of dismissal should be reversed.