Albert **GREENWOOD**, M.D., Plaintiff,

v.

The **STATE OF NEW YORK, OFFICE OF MENTAL HEALTH, et al.**, Defendants.

**No. 84 CIV. 9143 (PKL).**

United States District Court, S.D. New York.

Sept. 26, 1986.

---

John M. McLaughlin, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Peter A. Durfee, of counsel), for moving defendants.

LEISURE, District Judge:

This action was brought by plaintiff, Dr. Albert Greenwood, pursuant to 42 U.S.C. § 1983. Plaintiff claims that the State of New York, Office of Mental Health ("OMH"), certain of its staff, and other officials deprived him of the right to practice medicine at OMH without due process of law guaranteed under the Fourteenth Amendment. Greenwood also asserts various unspecified claims grounded in state tort law, with jurisdiction alleged under principles of pendent jurisdiction.

Certain defendants, including OMH, have moved to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), alleging specifically that plaintiff's federal claims are barred by the statute of limitations.

## FACTUAL BACKGROUND

In view of the fact that defendants rely on the statute of limitations, the facts as alleged in the amended complaint are set forth below in detail.

Plaintiff Albert Greenwood, M.D. is a duly licensed and certified psychiatrist who has been employed by defendant Manhat-

tan Psychiatric Center since 1977. (Amended Complaint ¶¶ 4–6).

Defendant State of New York, Office of Mental Health is a state agency providing for certain mentally ill persons. (¶ 7).

Defendant James A. Prevost, M.D. was the commissioner of OMH at all times relevant to this action until 1982. (¶ 8).

Defendant Sarah Connell, C.S.W. was, at all times relevant, regional director of OMH for New York City. (¶ 9).

Defendant Manhattan Psychiatric Center (MPC) is a facility owned and operated by defendant OMH. (¶ 10).

Defendant Gabriel Koz, M.D. was executive director of MPC at all times relevant until June, 1982. (¶ 11).

Defendant Michael H. Ford, M.D. was deputy director clinical at MPC at all times relevant until June, 1982, at which time he succeeded defendant Dr. Koz as executive director. (¶ 12).

Defendant Yves Chenier, M.D. was director of the division of MPC to which plaintiff was assigned. In June, 1982, Dr. Chenier became deputy director clinical of MPC, succeeding defendant Dr. Ford. (¶ 13).

Defendant Miodrag Ristich, M.D. served, at all times relevant, as chairman of the utilization review committee, and, from June of 1983 to September of 1984, was chief of medical services at MPC. (¶ 14).

Defendant Franklin S. Simon, M.D. was employed as a psychiatrist at MPC beginning in February, 1981 and served as secretary of the mortality review committee beginning in July, 1981. (¶ 15).

Defendant Willy Mautner, M.D. was director of clinical services at MPC until 1983 when he became director of laboratories. (¶ 16).

Defendant Roger Biron, M.D. was deputy director clinical of MPC until 1980, when he became medical administrator. (¶ 17).

Defendant Kenneth Kahaner, M.D. was, at all times relevant, director of the New York University Medical Center—MPC Affiliated Residency Training Program. (¶ 18).

Defendant Ruby C. Pasini, was, at all times relevant, clinical investigator for both the mortality review committee and the incident review committee at MPC. (¶ 19).

Defendants OMH, MPC, Connell, Ford, Chenier, Ristich, Mautner, Kahaner and Pasini bring the motion to dismiss. Defendants Prevost, Koz, Simon and Biron have apparently never been served with process in this action. All of the individual defendants are sued herein in both their individual and official capacities.

According to the amended complaint, on or about July of 1979, plaintiff was elected president of the medical board of MPC. (¶ 25). During plaintiff's term as president, he had various disagreements with the administration of MPC. (¶ 27).

In April, 1980, the medical board was disbanded at the direction of defendant Connell and a new organization, the executive committee of the medical staff, was established by Dr. Koz. (¶ 32–33). Dr. Koz then appointed Dr. Ford to be president of the Medical Staff. (¶ 33). In September, 1981, Dr. Koz announced that a new medical board would be constituted at MPC, with officers elected by the medical staff. (¶ 36). In October, 1981, plaintiff announced that he would seek election to his former position as president of the medical board. (¶ 40).

According to the amended complaint, in an effort to frustrate plaintiff's attempt to regain his former position, defendants began taking various actions against plaintiff. (¶ 38). About October 14, 1981, the MPC incident review committee began an inquiry into the death on October 5, 1981, of patient Anna Mohela, who had been under plaintiff's care. (¶ 37, 41). About October 21, 1981, the incident review committee issued a report to Dr. Koz, accusing plaintiff of wrongdoing in treating patient Mohela and referring the matter to Dr. Koz for further action. (¶ 44–45).

On October 15, 1981, the MPC mortality review committee began its inquiry into the death of patient Mohela. (¶ 54). About November 2, 1981, the mortality review committee apparently reached certain conclusions concerning the death of patient Mohela. (¶ 63). On November 4, 1981, Dr. Koz, having reviewed the committee's report, referred the matter to the MPC credentials committee for further action. (¶ 68).

About November 9, 1981, the credentials committee began its inquiry concerning plaintiff. (¶ 72). For this purpose, the chairman, defendant Dr. Ristich, convened a subcommittee consisting of himself, defendant Dr. Kahaner and defendant Dr. Mautner. (¶ 75). On or about December 16, 1981, the subcommittee allegedly issued to Dr. Koz, on behalf of the full committee, a report recommending that plaintiff's privileges as staff psychiatrist at MPC be revoked. (¶ 77).

On December 18, 1981, defendant Dr. Ford delivered to plaintiff a letter from Dr. Koz, MPC executive director, informing plaintiff of the report and recommendations of the credentials committee, and informing plaintiff of Dr. Koz's order that, effective December 21, 1981, plaintiff's privileges at MPC were revoked and plaintiff was reduced to the rank of psychiatric fellow. (¶¶ 79, 80).

Plaintiff asserts that he was never given an opportunity to refute the charges made against him in the various committee reports. (¶ 81).

As to the period after December 21, 1981, the amended complaint alleges that plaintiff refused to resign his employment and that, on January 12, 1982, plaintiff appealed the revocation of his clinical privileges. (¶¶ 96, 97). This appeal was denied on January 19, 1982. (¶ 98).

On April 19, 1982, defendants allegedly instituted disciplinary proceedings against plaintiff. (¶ 100). These proceedings are currently the subject of an ongoing arbitration pursuant to a collective bargaining agreement. (¶ 101).

Sometime in 1982, plaintiff was reassigned to a residency training program and, on completion of that program, was assigned to the medical records section at MPC, where he has worked from May, 1982 until the present. (¶ 102, 103).

Finally, plaintiff alleges that in June, 1982 defendants caused the District Attorney for the County of New York to institute a criminal investigation of plaintiff. (¶ 104). Plaintiff also alleges that in September, 1982 defendants caused the New York State Department of Health to initiate an investigation of plaintiff.

According to the amended complaint, defendants' conduct was "designed to harass, humiliate, frustrate and intimidate the plaintiff in the performance of his official duties with the intent that he voluntarily surrender his rights and resign from his State employment." (p. 2).

Plaintiff placed the original complaint in this action in the night depository box maintained by the Clerk of this Court on December 18, 1984. The time, as stamped by the clock provided by the clerk with the night depository box, was 5:25 p.m. The complaint was marked "filed" by the Clerk on December 19, 1984, the following day. No defendant in this action was served with process before March 1, 1985, and, as already indicated, several named defendants apparently have yet to be served.

## DISCUSSION OF LAW

### I. *The Applicable Statute of Limitations*

■ Since 42 U.S.C. § 1983 does not establish a time limitation for the federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). In 42 U.S.C. § 1988, Congress has implicitly endorsed this approach. *Id.*

In the interest of uniformity, certainty and efficiency, the Supreme Court has recently held that all § 1983 actions should be considered general personal injury

claims for the purpose of choosing the appropriate statute of limitations within a state. *Id.* at 1947, 1949. New York's statute of limitations for general personal injury claims is three years. New York C.P. L.R. § 214(5). The Second Circuit has "long applied a three year statute of limitations to New York section 1983 claims" and the Court of Appeals has indicated, without finally deciding, that under *Wilson* a three-year rule will continue to be appropriate. *Villante v. Dept. of Corrections*, 786 F.2d 516, 520 n. 2 (2d Cir.1986); *accord Okure v. Owens*, 625 F.Supp. 1568, 1571 (N.D.N.Y. 1986), *leave to appeal granted* (2d Cir. May 1986). The three-year rule will be followed herein.

## II.  *Accrual of Plaintiff's Claim*

■ To determine whether plaintiff's case was initiated within the three-year statutory limit, it is necessary to decide when his cause of action arose. "Federal law determines when a claim accrues under § 1983." *Pauk v. Board of Trustees of the City University of New York*, 654 F.2d 856, 859 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). Courts in this Circuit have consistently adopted the rule of *Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir.1977), *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979), which held that accrual occurs at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 263. *See Pauk*, 654 F.2d at 859; *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Estate of Masselli v. Silverman*, 606 F.Supp. 341, 344 (S.D.N.Y.1985); *Loo v. Prevost*, No. 83–2089, slip op. at 7 (E.D. N.Y. March 28, 1984). Plaintiff knew or should have known of his injury on December 18, 1981, when he received the letter informing him that executive director Koz had accepted and implemented the recommendations of the credentials committee that plaintiff's privileges as a staff psychiatrist be revoked, that he be demoted to psychiatric fellow, and that he be prohibit-

ed from treating patients. (Complaint, ¶¶ 77, 79).

The demotion was effective on Monday, December 21, 1981. (¶ 80). The Supreme Court has held that a § 1983 action accrues on the date that an employee is notified by letter that a final decision has been made to demote him or to terminate his employment, even if the effective date of the action is sometime later. *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). Subsequent events which occurred as a consequence of Greenwood's demotion do not postpone the accrual date or toll the running of the statute of limitations. As the Supreme Court has held, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 506, 66 L.Ed.2d 431 (1980). Thus, although Greenwood's appeal of the revocation of his clinical privileges was not rejected until January 19, 1982, his claim accrued when he first knew of his injury, on December 18, 1981. "[T]he proper focus is upon the time of the ... *acts*, not upon the time at which the *consequences* of the acts became most painful." *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504 (emphasis in original) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). *Accord Singleton*, 632 F.2d at 192; *Loo, supra*, slip op. at 9.

Plaintiff argues in his Surreply Memorandum of Law that because the amended complaint alleges a conspiracy, "[e]ach individual act yields a claim of unconstitutional conduct ... which accrues in accordance with its own facts and without regard to the dates of accrual of the claims presented by the other wrongful acts." (at 8). This Circuit has rejected this argument, however. In *Singleton*, the Court stated that "[c]haracterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts. The crucial

time for accrual purposes is when plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action."

632 F.2d at 192. *See also Rodrigues v. Village of Larchmont*, 608 F.Supp. 467, 477 n. 11 (S.D.N.Y.1985).

While plaintiff's constitutional claim is not set forth with specificity in the amended complaint, the gravamen of his claim is clearly that he was denied notice and an opportunity to be heard before his credentials were revoked. (Amended Complaint, at 2, ¶ 108). By definition, then, the alleged constitutional violation of which plaintiff complains must have occurred on or before December 18, when the fact of revocation was communicated to plaintiff. The events occurring after December 18, 1981, which plaintiff's Surreply Memorandum alleges to be "woven together with the thread of conspiracy," (at 8), do not, under *Singleton*, postpone the accrual date of this alleged violation. Moreover, an examination of plaintiff's amended complaint for any independent violations transpiring after December 18, 1981, makes clear that most of the allegations will support, at most, state law tort claims. In this regard, plaintiff alleges that: (1) Dr. Koz, in January, 1982 denied plaintiff's appeal of the termination of his clinical privileges (¶¶ 97–98), and (2) that in April, 1982 defendants continued to wrongfully refuse to restore to plaintiff his rightful clinical privileges. (¶¶ 102–03). Under *Ricks*, and *Singleton*, however, these allegations cannot be considered the basis of independent claims since the alleged events were merely the consequences of the prior demotion decision which itself gave rise to a § 1983 cause of action. Plaintiff's federal claim is thus a single cause of action for his demotion and consequent loss of clinical privileges.

### III. *Date of Filing of the Complaint*

■ As discussed previously, New York C.P.L.R. § 214 requires that this action "be commenced" within three years. Fed.R.Civ.P. 3 states that "[a] civil action is commenced by filing a complaint with the court."[1] Thus, this Court must determine whether papers placed in the night depository box maintained by the Clerk of this Court were filed within the three-year statute of limitations. Fed.R.Civ.P. 77(a) states that "[t]he district courts shall be deemed always open for the purpose of filing any pleading or other proper paper...." Plaintiff cites Rule 77(a) for the proposition that, since the court was "deemed open," his papers should be considered filed as of December 18, 1984, and within the three-year limit.

■ In this case, however, General Rule 1 (a) of the Southern District of New York is also pertinent. The rule, adopted under authority of 28 U.S.C. § 2071, provides that papers submitted after business hours in the night depository box "will be considered to have been filed as of 8:30 A.M. the *following* business day." *See* General Rule 1(a) for the Southern and Eastern Districts of New York (emphasis added). In this Circuit, as elsewhere, local rules have the force of law "[s]o long as such rules do not conflict with rules prescribed by the Supreme Court, congressional enactments, or constitutional provisions." *United States v. Yonkers Board of Education*, 747 F.2d 111, 112 (2d Cir.1984) (citing *Weil v. Neary*, 278 U.S. 160, 169, 49 S.Ct. 144, 148, 73 L.Ed. 243 (1929)). *Accord In re Sutter*, 543 F.2d 1030, 1036 (2d Cir.1976) (all Federal courts have authority to establish necessary rules for the orderly conduct of business); *In re "Agent Orange" Product Liability Litigation*, 100 F.R.D. 778, 780 (E.D.N.Y.1984) (attorneys violate the local rules of the Southern and Eastern Districts "at their peril"); *Adams v. Jarka*

---

**1.** In an action created by federal law, such as that under § 1983, the statute of limitations is tolled by the filing of the complaint. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 n. 11, 100 S.Ct. 1978, 1985 n. 11, 64 L.Ed.2d 659

(1980); *United States v. Jack Cozza, Inc.*, 106 F.R.D. 264, 268 (S.D.N.Y.1985); *Cohen v. Board of Education*, 536 F.Supp. 486, 495 (S.D.N.Y. 1982); *Gutierrez v. Vergari*, 499 F.Supp. 1040, 1049 (S.D.N.Y.1980).

*Corp.*, 8 F.R.D. 571, 574–75 (S.D.N.Y.1948) (Kaufman, J.) (local rule is upheld as not inconsistent with Federal Rules, with the result that the action is dismissed).

■ General Rule 1(a) does not conflict with Fed.R.Civ.P. 77(a) because Rule 77(a), while stating that the courthouse "shall be deemed always open for the purpose of filing," does not specify the date on which papers should be considered filed if deposited at the courthouse after regular business hours.[2] Moreover, the text of the Federal Rules of Civil Procedure indicates that the drafters intended the rules in general, and specifically Rule 77, to be read in conjunction with local court rules. *See, e.g.,* Fed. R.Civ.Proc. 6(a), 77(c). Finally, plaintiff asserts no exceptional circumstance which would justify equitable tolling of the statute of limitations in this case. Thus, plaintiff's claim must be considered filed on December 19, 1984—one day after the three-year statute of limitations expired. The result, that plaintiff's claim is barred due to lack of diligence and attention regarding the statute of limitations, is harsh, but local rules "are binding on the district judges until properly amended or repealed." *Yonkers Board of Education,* 747 F.2d at 112.

## CONCLUSION

For the reasons presented, plaintiff's claim is barred by the applicable statute of limitations. Without a pending federal claim, this court declines jurisdiction of plaintiff's state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Federman v. Empire Fire and Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir.1979). Accordingly, the complaint is dismissed.

SO ORDERED.

---

**2.** In fact, it is Rule 5(e), not Rule 77, that "defines what constitutes filing with the court." *Notes of Advisory Committee on Rules,* n. 1 to Rule 3. Like Rule 77, Rule 5(e) does not

preempt General Rule 1(a). Rule 5(e) simply states that "[t]he filing of ... papers with the court ... shall be made by filing them with the clerk of the court...."