**Ron LUSKER and Marilyn Lusker, Plaintiffs,**

v.

**Manfred OHRENSTEIN, Margaret Reed, New York City Community Board # 2, New York City Loft Board, New York City Department of Buildings, New York City Department of Cultural Affairs, New York City Department of City Planning, Marcella Zelmanoff, Vincent P. Hanley, David B. Saxe, Robert M. Morgenthau, Mary Jo White, City of**

---

New York, and others as yet Unknown [1],
Defendants.

No. 94 Civ. 6794(JES).

United States District Court,
S.D. New York.

Feb. 24, 1998.

---

1. The above caption reflects all defendants identified in the caption of the Luskers' First Amended Complaint. However, in the body of the First Amended Complaint, plaintiffs also refer to the following additional defendants: Benjamin Iselin, Chairman, New York City Loft Board; Bess Myerson, Commissioner, Department of Cultural Affairs; George Sakona, Superintendent, New York City Department of Buildings; Rita Lee, District Manager of Community Board # 2; Herbert Sturz, Commissioner, New York City Planning Commission; and Robin Green, a staff worker. *See* First Amended Complaint ("Am. Compl.") ¶¶ 3, 29. Herbert Sturz has been served with the First Amended Complaint, and the Municipal defendants have moved on his behalf. However, the Municipal defendants note that the remaining defendants omitted from the caption have not been served with the First Amended Complaint. Since plaintiffs filed the action *pro se*, did name those defendants in the caption of the original complaint, did serve several of them with the original complaint, and the Municipal defendants' motion is dispositive of all claims, the Court deems the Municipal defendants' motion to include those defendants.

Lenihan & Anderson, White Plains, NY (P. Michael Anderson, of counsel), for Plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York, New York City (David Monachino, Assistant Attorney General, of counsel), for State Defendants.

Paul A Crotty, Corporation Counsel, City of New York, New York City (Louise Lippin, Assistant Corporation Counsel, of counsel), for Municipal Defendants.

Marci Zelmanoff, New York City, pro se.

Hanley, Goble & Dennis, New York City (Mark Tyler, of counsel), for Defendant Hanley.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. § 1961, *et seq.*, and New York State common law, plaintiffs Ron Lusker and Marilyn Lusker ("plaintiffs"), initially appearing *pro se*, filed the instant action against defendants Manfred Ohrenstein and Margaret Reed (the "State defendants"); defendants New York City Community Board # 2, New York City Loft Board, New York City Department of Buildings, New York City Department of Cultural Affairs, New York City Department of City Planning, and the City of New York (the "Municipal defendants"); and Marcella Zelmanoff, Vincent P. Hanley, David B. Saxe, Robert M. Morgenthau, and Mary Jo White (together "defendants") alleging that defendants conspired, beginning in 1979, to deprive them of two properties they owned at 43 Crosby Street and 85 Mercer Street in the SoHo area of New York City. Defendants move for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, defendants' motions for summary judgment are granted.

## BACKGROUND[2]

Plaintiffs are artists engaged in the making of fine art paintings and sculpture. *See* Am.Compl. ¶ 7. When the art market is soft, plaintiffs also earn a living by architectural design and building construction and renovation. *Id.*

### I. *43 Crosby Street*

In 1979, plaintiffs acquired a 5–story derelict loft building at 43 Crosby Street. Thereafter, plaintiffs filed plans with the Department of Buildings to convert the property to a different commercial use, with storage in the cellar, a restaurant on the first floor, and joint living and working spaces on the remaining floors. *See* Am.Compl. ¶ 14; Affidavit of David Monachino ("Monachino Aff.") Sworn to June 31, 1995, Exh. C. The Department of Buildings approved the plans, a work permit was authorized, construction began, and units on the upper floors were rented to various tenants. *See* Am.Compl. ¶ 15; Monachino Aff., Exh. C.

Later that year, plaintiffs allege that a series of spurious complaints and malicious

---

**2.** The facts recited in plaintiffs' amended complaint and affidavit in opposition to the instant motions for summary judgment are convoluted. Although plaintiffs retained counsel immediately after Oral Argument on the instant motions, and the Court afforded counsel an opportunity to submit a supplemental affidavit and memorandum of law in opposition to the motions, the facts contained therein do not greatly clarify the sequence of events underlying plaintiffs' claims.

However, plaintiffs have instituted prior federal and state court actions that have resulted in written decisions that defendants attach to their moving papers as exhibits. In light of the maxim that submissions by a *pro se* litigant should be liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court, where necessary, recites facts set forth in these prior decisions to provide greater clarity to the facts underlying plaintiffs' claims.

rumors about them began to circulate in the SoHo community. *See* Am.Compl. ¶ 15; Plaintiffs' Affidavit ("Pls.' Aff.") Sworn to November 13, 1995, ¶ 21. Plaintiffs allege that defendants Lee, the District Manager of Community Board # 2; Ohrenstein, a New York State Senator; and Reed, Ohrenstein's community liaison, orchestrated the spreading of these complaints and malicious rumors. *Id.* According to plaintiffs, these defendants circulated a derogatory article suggesting that Ron Lusker had a prior felony conviction and would turn his planned restaurant into a Mafia-controlled disco with adverse consequences for the neighborhood. *See* Am.Compl. ¶ 15.

Moreover, plaintiffs allege that Lee sent the news article both to Sakona, the Superintendent of the Buildings Department, and to the City Planning Commission, and that Ohrenstein's office and Lee pressured Sakona to rescind plaintiffs' building permit. *Id.* ¶ 16. Plaintiffs further state that an agent from the Planning Commission came to their restaurant and told them that Ohrenstein did not want plaintiffs to build the restaurant because Ohrenstein's friends and relatives who lived in the adjoining building objected to the restaurant, and that defendants would delay plaintiffs' work until the law could be redrafted to prevent it. *Id.*

On or about September 19, 1979, plaintiffs' work permit was revoked and a stop-work order was issued by Sakona after an on-site inspection revealed that a large bar had been constructed on the first floor of 43 Crosby Street and connected to the plumbing, an alteration not included in the plans filed with the Department of Buildings. *See* Am. Compl. ¶ 17; Monachino Aff., Exh. C. Plaintiffs contend that this stop-work order was spurious and that, in order to prolong the delay, Sakona guaranteed plaintiffs that he would personally approve their application if they changed their plans to a different use group. *See* Am.Compl. ¶ 17. Plaintiffs allege that Sakona knew that his suggestion would require the review of Community Board # 2 and that such action would result in further delays and certain failure. *See* Am.Compl. ¶ 18.[3]

Plaintiffs acted on Sakona's suggestion and had their architect redraw the plans. *See* Am.Compl. ¶ 18. However, after the new plans were presented, plaintiffs claim that Sakona told them that in order to have a restaurant in the building, plaintiffs would have to remove the cooking stoves and disconnect the bathtubs in the tenants' lofts because they were not permitted for artists' studios. *Id.* He further stated that once the restaurant was approved, the cooking stoves could be replaced. *Id.* Sakona purportedly issued plaintiffs a permit to remove the stoves, which they did, causing a rent strike that plaintiffs allege was instigated by Ohrenstein. *See* Am.Compl. ¶¶ 19, 20, 32; Monachino Aff.Exh. C.[4]

On November 17, 1980, plaintiffs filed suit in United States District Court for the Southern District of New York seeking to enjoin defendants from alleged discriminatory practices relating to their 43 Crosby Street property and to compel defendants to issue a Certificate of Occupancy. *See* Am. Compl. ¶ 22; Monachino Aff., Exh. C.[5] After

3. Plaintiffs further state in their Affidavit in Opposition that on November 9, 1979, the New York City Fire Department arrived at a party hosted by plaintiffs and issued a vacate order for the premises. *See* Pls.' Aff. ¶ 25. It appears that the vacate order may have been issued for the entire building based on inadequate fire escapes and was removed from the upper floors approximately nine months later. *Id.* ¶¶ 25, 27, 33–35. It remains in effect today for the first floor. *Id.* Plaintiffs allege that the Fire Department already had the vacate order in hand when they arrived and intended to induce Ron Lusker into committing a misdemeanor offense. *Id.* ¶ 25. In 1980, Ron Lusker was convicted of a misdemeanor for failure to follow an order of the Fire Commissioner. *Id.* ¶¶ 25, 27.

4. Plaintiffs state that in or about January 1980, they borrowed $125,000 at 24% interest on a second mortgage on 43 Crosby Street to pay the taxes and attorney's fees as a result of defendants Ohrenstein, Reed, and Lee's actions. *See* Compl. ¶ 32. In addition, the rent strike forced plaintiffs to liquidate their home, valued at $250,000, for a distressed price of $69,000 to pay part of the demands of the second mortgagee, and that a first mortgage of $350,000 was made in order to pay off the remainder of the second mortgage. *Id.* Plaintiffs further state that they later obtained a mortgage on the increased value of their property in SoHo of $1,200,000. *Id.* ¶ 33.

5. Defendants in the 1980 action included Irwin Fruchtman, individually and as the Commissioner of the Department of Buildings of the City of

the parties consented to consolidate a hearing held on the preliminary injunction with a trial on the merits, Judge Sweet issued an Opinion and Order on March 26, 1981, dismissing the action. Judge Sweet held that the court should abstain from exercising jurisdiction, and that, in any event, plaintiffs had not demonstrated that the admitted community bias manifested itself in the administrative process, that they had been selectively treated among those similarly situated, or that defendants had acted with a bad faith intent to punish plaintiffs for the exercise of constitutional rights. Judge Sweet further found that neither defendants' revocation of plaintiffs' building permit without an evidentiary hearing nor defendants' overall treatment of plaintiffs amounted to a deprivation of property without due process of law. See Monachino Aff., Exh. C.

On or about September 16 or 17, 1994, plaintiffs appeared before the Community Board's review committee on liquor applications in connection with an application for their 43 Crosby Street property. See Am. Compl. ¶ 34; Pls.' Aff. ¶ 20. Plaintiffs allege that Reed and Lee sat next to the chairman and coached her to recite in front of 150 people assembled for the hearing a list of character assaults, including Ron Lusker's thirty-year-old conviction, which they knew had been fully pardoned. Id.

## II. *85 Mercer Street*

Plaintiffs allege a comparable tale regarding property they own at 85 Mercer Street. In or about October 1974, plaintiffs entered into a lease for the ground floor of 85 Mercer Street, described as an "Artist Studio," for a term of ten years with an option to renew for an additional five years. See Am.Compl. ¶ 7; Monachino Aff., Exh. D. Plaintiffs sublet a portion of the loft to Zelmanoff. See Am.

Compl. ¶ 7. At the time of the events described herein, it appears that 85 Mercer Street was zoned as a manufacturing district, in accordance with the City's policy to preserve space for manufacturing and commercial purposes. See Monachino Aff., Exh. D. As such, regulations did not allow residential use or joint living-work quarters for artists on the ground floor of a building the size of 85 Mercer Street. Id.

In or about 1980 or 1982, the New York City Office of Loft Enforcement notified plaintiffs that Zelmanoff's residential use of her store on the ground floor constituted a zoning violation. See Am.Compl. ¶¶ 8, 10; Pls.' Aff. ¶ 52, Exh. 47. Accordingly, plaintiffs allege that Zelmanoff proposed a partnership with plaintiffs whereby she would lend money to plaintiffs, "grandfather" her retail use of the loft, withdraw a residential application she had submitted, and then sell or rent the store to a third party. Am. Compl. ¶ 12. Plaintiffs and Zelmanoff entered into a written agreement on June 21, 1983, which set forth the parties' respective rights in the loft in anticipation of purchase of the building by a building corporation. Id.[6]

However, plaintiffs contend that Zelmanoff informed Ohrenstein, Reed, and Lee that plaintiffs were forcing her to leave her home. See Am.Compl. ¶ 24. Therefore, they suggested that Zelmanoff obtain permission to separate her store application from the plans filed by plaintiffs, file separately under the guise of not impeding their progress, surreptitiously file a new residential application with the Loft Board, and make a falsified application to the Planning Commission with the assistance of Vincent P. Hanley, her attorney. Id. Plaintiffs further allege that Ohrenstein, Reed, and Lee assisted Zelma-

New York; Irving Minken, individually and as Deputy Commissioner of the New York City Department of Buildings; George Sakona, individually and as Superintendent of the New York City Department of Buildings; Cornelius F. Dennis, individually and as Director of Operations of the New York Department of Buildings; Stuart Klein, individually and as Inspector General of the New York City Department of Buildings; and Robert J. McGuire, as Police Commissioner of the New York City Police Department. See Monachino Aff., Exh. C.

6. In or about the summer of 1983, the tenants residing in the buildings located at 85 and 87 Mercer Street began discussions with the owners to negotiate the purchase of the two buildings, intending to convert the apartments into cooperatives, and formed a building corporation to serve as the purchasing entity of the buildings. See Am.Compl. ¶ 9; Monachino Aff., Exh. D.

noff in approving these falsified applications. *Id.* ¶ 25.

In or about 1984, the building corporation purchased the two buildings. Thereafter, Zelmanoff applied for artist certification from the New York City Department of Cultural Affairs, which was granted on May 14, 1984. *See* Am.Compl. ¶ 26. At the same time, plaintiffs allege that Myerson rescinded Ron Lusker's artist certification, at the behest of Zelmanoff, and that Marilyn Lusker's certification was denied, both of which apparently were required for plaintiffs to be eligible to live at 85 Mercer Street. *See* Am.Compl. ¶ 27; Plaintiffs' Statement Pursuant to Local Rule 3(g) ("Rule 3(g) Stmt.") ¶ 4; Pls.' Aff. ¶ 23. Plaintiffs state that, by being denied certification, they were denied the use of their residence and virtually evicted from their home. *See* Am.Compl. ¶ 27.

In or about June 1985, Zelmanoff applied to the New York City Planning Commission to oppose plans to modify her portion of the loft to joint living-working artists' quarters. *See* Am.Compl. ¶ 28. The City Planning Commission approved her application on June 19, 1985. *Id.* In reaching this decision, plaintiffs allege that City Planning Commissioner Sturz ignored the terms of Zelmanoff's lease, granted a zoning change not yet permitted by the law, and willfully accepted a falsified application from Zelmanoff and Hanley. *See* Am.Compl. ¶ 28. In addition, plaintiffs assert that Sturz, acting on a call from Zelmanoff and Reed, instructed Green, a staff worker, to "sanitize" and approve falsified facts in Zelmanoff's application. *Id.* ¶ 29. Plaintiffs additionally allege that defendants delayed approval of plaintiffs' applications for ground floor uses and reopened an application that had already passed review, thereby delaying their applications for years. *Id.*

At or about the same time, Zelmanoff applied to the Loft Board for coverage of her portion of the loft as an Interim Multiple Dwelling under the protection of the Loft Law. *See* Affidavit of Louise Lippin ("Lippin Aff.") Sworn to August 11, 1995, Exh. B.

Ron Lusker contested Zelmanoff's application. *See* Lippin Aff., Exh. B. Additionally, on April 17, 1987, he initiated an action in New York State Supreme Court by order to show cause seeking to enjoin Zelmanoff from utilizing her ground floor loft at 85 Mercer Street and from obtaining residential status for the unit pursuant to Article 7–C of the Multiple Dwelling Law. *See* Monachino Aff., Exh. D. Lusker also sought an injunction against the New York City Loft Board restraining it from granting Zelmanoff's application. *Id.* Lusker alleged that Zelmanoff continued to use her portion of the Loft for residential purposes in violation of the parties' June 12, 1983, agreement, and he sought specific performance of Zelmanoff's obligation to obtain a commercial variance and to terminate residential use of her portion of the loft. *Id.* Lusker further alleged that prior to June 12, 1983, Zelmanoff falsely and fraudulently represented to plaintiffs that she wanted to enter into an agreement of "resale" or a "joint venture proposition." *Id.*

In connection with the suit, plaintiffs allege that Zelmanoff, while employed as an attorney by the "Brooklyn Corporation Council [sic]," used that agency's office to conduct investigations and receive information about plaintiffs' personal finances and prior felony conviction records. *See* Am.Compl. ¶ 35. Moreover, plaintiffs allege that Ohrenstein and other defendants asked federal and state agencies to investigate plaintiffs in an attempt to perfect their scheme and that these agencies used surveillance, recording devices, video cameras, telephones, and the United Stated Postal Service in furtherance of that plan. *Id.* ¶ 39. Plaintiffs further state that they complained to the District Attorney and the United States Attorney about defendants' actions but were ignored. *Id.* ¶¶ 40, 41.[7]

On August 17, 1989, the Loft Board issued a decision on Zelmanoff's 1985 application, holding that her portion of the loft qualified for Loft Law protection and that she did not waive her rights under the Loft Law by entering into her earlier partnership agreement with plaintiffs. Thereafter, Ron Lusk-

---

7. Plaintiffs do not indicate the date when they contacted the United States Attorney but do indicate that they contacted the Inspector General for the Loft Board and the District Attorney's Office regarding their complaints on March 7, 1993, and May 25, 1993, respectively. *See* Compl. ¶¶ 40–41.

er filed an Article 78 petition seeking to set aside and annul the Loft Board's decision. *See In the Matter of Ronald Lusker v. City of New York,* 194 A.D.2d 487, 599 N.Y.S.2d 575 (1993). The Court dismissed Lusker's petition, holding that the Loft Board's decision was not arbitrary, capricious, or an abuse of discretion, and that its rulings were rationally based on the application of the law after a review of the documentary evidence submitted. *Id.* On June 29, 1993, the Appellate Division, First Department, affirmed that decision, *see id.,* and on November 18, 1993, the New York Court of Appeals denied leave to appeal. *See Matter of Lusker v. City of New York,* 82 N.Y.2d 660, 605 N.Y.S.2d 6, 625 N.E.2d 591 (1993).

In addition, New York State Supreme Court heard testimony from Ron Lusker in his 1987 action but dismissed his complaint in all respects on November 20, 1995, after the close of his case. *See* Letter from Marci Zelmanoff dated February 12, 1996; Pls.' Aff. ¶ 39. It also appears from the Record that Lusker may have filed a second Article 78 proceeding, which he subsequently discontinued without prejudice. *See* Plaintiff Ron Lusker's Supplemental Affidavit in Opposition to State Defendants' Fed.R.Civ.P. Rule 12(b) Motion to Dismiss ("Ron Lusker Supp. Aff.") Sworn to April 2, 1996, Exh. G.[8]

### III. *The Instant Action*

On September 19, 1994, plaintiffs commenced the instant action, and thereafter filed an amended complaint on January 27, 1995, for violations under 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. § 1961, *et seq.,* and common law. In particular, plaintiffs allege violations of the substantive due process and equal protection provisions of the Fourteenth Amendment, conversion, and conspiracy to extort, assault, defame, intentionally inflict emotional distress, and intentionally interfere with plaintiffs' prospective business relations. Plaintiffs allege that their property rights in both buildings have been taken and/or impaired, their reputations in the SoHo community blackened, and their ability to do business in New York City impaired, by the sustained, concerted actions of defendants; that the first indication of defendants' collusive efforts to deny them their property rights was a threat made to them at a meeting of Community Board # 2 on September 8, 1980, that "they would never do any [more] business in New York City," *see* Lusker Aff., ¶ 26; and that the Municipal defendants have repeatedly and unreasonably delayed acting on plaintiffs' renovation and building applications, stalled administrative action to gain the benefits of changes in zoning laws then "in process" and known to the various municipal defendants, but not to plaintiffs, and used dilatory tactics, including incorrect denials and determinations and repeated inspections of plaintiffs' property, to harass plaintiffs and deplete their resources and ability to pursue their administrative remedies with various New York City agencies. Plaintiffs seek compensatory and punitive damages in the amount of $6,350,000 and $5,600,000, respectively, trebled pursuant to state and federal law, together with costs and attorneys fees.[9]

On July 31, 1995, August 11, 1995, and August 19, 1995, the State defendants, the Municipal defendants, and Hanley, respectively, moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. The State defendants argue that the claims against them are barred by the statute of limitations and qualified immunity and that the complaint fails to state a claim under 42 U.S.C. §§ 1983 and 1985. The Municipal defendants argue that the claims against them are also barred by

---

8. Plaintiffs also state that in or about 1993, in furtherance of the scheme to defraud and steal plaintiffs' property, Zelmanoff used false pretenses to obtain assistance from the "Welfare/Public assistance agency." *See* Am.Compl. ¶¶ 52, 53. Plaintiffs state that Zelmanoff encumbered plaintiffs' property by manipulating Public Assistance to accept her application by placing a lien on plaintiffs' property and its five shares of corporate stock which she held in common with plaintiffs as part of the contract for the loft at 85 Mercer Street. *Id.* ¶ 55.

9. On March 10, 1995, plaintiffs signed a letter withdrawing all claims against Saxe, White and Morgenthau, in addition to withdrawing all RICO claims in this action. *See* Monachino Aff., Exh. A. However, in Plaintiffs' Opposition to Defendants' Motion to Dismiss or Alternatively Defendants' Motion for Summary Judgment, plaintiffs seek reinstatement of their RICO claims.

the statute of limitations, as well as by the doctrines of res judicata and collateral estoppel. Finally, Hanley argues that the claims against him must be dismissed because he is not a state actor and because plaintiffs have not established the discriminatory intent required to state a claim under 42 U.S.C. § 1985. The Municipal defendants, Hanley, and Zelmanoff join in the brief submitted by the State defendants.

Immediately prior to Oral Argument, the Court received a letter from counsel who indicated that he would represent plaintiffs if the Court denied defendants' motions. After hearing Oral Argument from plaintiffs *pro se*, the Court reserved decision and afforded counsel an opportunity to file a notice of appearance on plaintiffs' behalf, submit a supplemental affidavit and memorandum of law in opposition to defendants' motions, and appear again for Oral Argument.

In their supplemental papers, plaintiffs, now represented by counsel, state that the Department of Buildings issued a permit for their restaurant at 43 Crosby Street on February 21, 1995, and that the New York State Liquor Authority issued a liquor license in late March 1995, but that on November 14, 1995, the Department of Buildings issued a final revocation of all prior approvals permitting plaintiffs to operate their restaurant. *See* Ron Lusker's Supp.Aff. ¶ 5.[10] Moreover, plaintiffs state that during that interval, the Department of Buildings frequently inspected their 43 Crosby Street property at the behest of Community Board # 2, Lee, and Reed. *Id.* ¶¶ 9, 10. Plaintiffs contend that the City defendants' approval of thirteen restaurants and ten retail/gallery operations on Crosby and Mercer Streets, while repeatedly denying approval for plaintiffs' 43 Crosby Street property, demonstrates that plaintiffs are being denied equal protection under the applicable zoning laws. *Id.* ¶¶ 12–21.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), summary judgment in favor of the moving party is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a moving party's motion for summary judgment, the Court views all facts and construes all rational inferences derived therefrom in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In this case, construing plaintiffs' amended complaint liberally as the Court must, *see Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and read in conjunction with their opposition papers and affidavits, *see Le Grand v. Evan,* 702 F.2d 415, 416 n. 3 (2d Cir.1983), the complaint must be dismissed.

Plaintiffs fail to state a claim under § 1985, because plaintiffs do not allege or offer any evidence that defendants were motivated by a class-based discriminatory animus. It is well established that an allegation of class-based animus is essential to state a claim under § 1985. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Gleason v. McBride,* 869 F.2d 688, 694–95 (2d Cir.1989). Because plaintiffs claim neither that they are members of a protected class nor that they are the victims of defendants' class-based animus, plaintiffs' claims under § 1985 must be dismissed.

Furthermore, plaintiffs' claims under both §§ 1983 and 1985 are barred by the applicable statute of limitations. The statute of limitations for plaintiffs' claims under §§ 1983 and 1985 is three years. *See Singleton v. City of New York,* 632 F.2d 185, 189 (2d Cir.1980), *cert. denied* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Blankman v. County of Nassau,* 819 F.Supp. 198, 206 (E.D.N.Y.1993). Under federal law, a claim accrues when the plaintiff " 'knows or has reason to know' of the injury that is the basis of the action." *Blankman,* 819 F.Supp. at 207 (quoting *Cullen v. Margiotta,* 811 F.2d 698 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)); *see also*

10. Notwithstanding this assertion, it seems that plaintiffs' liquor license was not revoked. *See*

Transcript of Oral Argument dated September 27, 1996, at 4.

*Singleton,* 632 F.2d at 191. Except when inconsistent with federal policy, state law governs tolling. *See Singleton,* 632 F.2d at 191.

In *Singleton,* the Second Circuit stated:

Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts. The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims. As we stated in *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.), *cert. denied sub nom. Kaplow v. Reinfeld,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956):

The person harmed by the conspiracy may bring suit as soon as the damage to him is inflicted; he obviously need not wait until the termination of the conspiracy which caused it. It is at the time of the injury that the 'right to relief by action' arises and the statute therefore begins to run at the moment such injury occurs.

The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirator's separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether that act is labeled a tort or a violation of § 1983. (citations omitted).

632 F.2d at 192.

In the instant action, the only events which occurred within the limitations period were (1) false statements allegedly made before Community Board # 2 in September 1994, in connection with plaintiffs' liquor license application; (2) District Attorney Robert Mor-genthau's and United States Attorney Mary Jo White's decisions not to investigate plaintiffs' complaints; (3) Zelmanoff's alleged inducement of the "Welfare/Public assistance agency" to grant her public assistance under false pretenses in 1993; and (4) the state court decisions. Plaintiffs' counsel at Oral Argument was unable to guide the Court to any other events occurring within the limitations period. *See* Transcript of Oral Argument dated September 27, 1996, at 4.

▮ Plaintiffs cannot assert a claim based upon denial of a liquor license, whether or not a false statement was made in connection therewith, because a license was issued. *Id.* Plaintiffs have withdrawn their claims against Morgenthau and White. *Id.* Nor can plaintiffs assert a legally sufficient claim under § 1983 arising from Zelmanoff's application for public assistance, for they do not allege that Zelmanoff acted under color of state law in applying for public assistance or in making the alleged false statements in connection with that application. Plaintiffs assert no claims arising from the state court decisions, nor could any claim properly be predicated upon a decision of a state court which a federal district court has no power to review *de novo.* It follows that these claims must be dismissed.

▮ The Court rejects plaintiffs' argument that they have presented facts constituting a continuing violation, including the 1995 revocation of plaintiffs' 43 Crosby Street permit, and that they are thus entitled to bring suit challenging all conduct that was part of the violation—even conduct that occurred outside the limitations period. Although plaintiffs rely on cases addressing that doctrine in the employment context, *see Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994), *Singleton* clearly demonstrates that plaintiffs may not recover for injuries which, as here, occurred prior to the limitations period, in the absence of some showing, which is not made here, that plaintiffs did not have notice of the injury during the applicable period of limitations.[11]

---

**11.** To the extent plaintiffs seek to recover for the revocation of their building permit at 43 Crosby Street in 1995, that injury occurred after the action was filed, and even after the amended complaint was filed. Therefore, it is not properly before the Court. This is especially true since no motion has been made by plaintiffs for leave to file a second amended complaint to include that subsequent event.

Counsel for plaintiffs requested leave at Oral Argument to submit an additional affidavit from

■ The Court further rejects plaintiffs' argument that the limitations period should be tolled because they did not have documentary evidence of Ohrenstein, Reed, and Lee's collusion with Zelmanoff to influence decisions of the Loft Board with respect to their 85 Mercer Street property until receiving long-delayed responses to their requests for documents under the New York Freedom of Information Law in 1993, and because despite numerous requests, they were denied access to City Planning Commission, Department of Cultural Affairs, and Department of Buildings files concerning 43 Crosby Street and 85 Mercer Street until 1993 and 1994. These assertions are insufficient to establish any basis for tolling, because plaintiffs allege no fraudulent concealment by defendants, nor any other conduct that was designed to dissuade plaintiffs from instituting judicial proceedings. Moreover, plaintiffs ignore the fact that they have long known of the injuries of which they complain. In no less than three separate court proceedings, plaintiffs have sought redress for the injuries complained of in this action. In their 1980 federal law suit brought pursuant to §§ 1983 and 1985, plaintiffs challenged the actions of the Department of Buildings concerning their property at 43 Crosby Street. Moreover, Ron Lusker initiated a state court action against Zelmanoff and the Loft Board in 1987 and challenged the Loft Board's decision in an Article 78 proceeding in 1989, which he then appealed. It follows that any claim that plaintiffs did not have knowledge of the alleged injuries is untenable.

Because the Court has dismissed all federal claims in this action, the Court need not reach defendants' remaining arguments. To the extent plaintiffs' amended complaint may allege a cause of action for defamation, the Court in its discretion declines to exercise pendent jurisdiction over this state law claim, regardless of its merit or lack thereof. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[12]

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are granted.

---

an architect addressing whether the Department of Buildings' records reflect any special permits or any investigation or enforcement activity by the Department against other establishments in SoHo identified in plaintiffs' supplemental affidavit in order to substantiate plaintiffs' due process claim. Counsel's application is denied as untimely. On March 6, 1996, the Court granted counsel leave to file a supplemental affidavit on or before April 1, 1996, and thereafter extended the deadline until May 1, 1996. Plaintiffs' papers were ultimately submitted on May 31, 1996, but were nonetheless accepted and considered by the Court. Plaintiffs' counsel waited until Oral Argument, on September 27, 1996, nearly six months after leave was initially granted, to raise this request. He could have, and should have, included the information in plaintiffs' supplemental papers.

In any event, as stated *supra*, the allegations pertain to new conduct which postdates this action. In addition, the availability under New York law of an Article 78 proceeding to remedy the alleged violation undercuts plaintiffs' claim that they were deprived of due process. *See Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 200 (2d Cir.1996). Moreover, it would be improper for the Court to undertake an independent review of the 1995 administrative decisions under the *Rooker–Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,* 398 U.S.

281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

**12.** Plaintiffs' counsel did not address reinstatement of plaintiffs' RICO claims. However, because the Supreme Court announced a uniform four-year limitations period for civil RICO actions, and the original RICO claims in the instant action accrued well before that period, plaintiffs' request is moot. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156–157, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (announcing a uniform four-year limitations period for civil RICO actions, but expressly declining to decide the question of when such civil RICO actions accrue); *see also Klehr v. A.O. Smith Corp.,* —— U.S. ——, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (holding that last predicate act rule for determining when civil RICO action accrues is not proper interpretation of RICO); *Bingham v. Zolt,* 66 F.3d 553, 559–60 (2d Cir.1995) (stating that the Second Circuit recognizes a 'separate accrual' rule, and that a plaintiff may recover only for injuries discovered or discoverable within four years of the time suit is brought.)

Plaintiffs have also requested that the Court grant a default judgment against Zelmanoff based on her failure to file an answer. That application is denied because the Court did not require her to file an answer until the instant motions were resolved. *See* Transcript of Oral Argument, dated September 27, 1996, at 20.

The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**